STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
LE ROY OSBORN, DEFENDANT-APPELLANT.

Argued February 23, 1960—Decided April 4, 1960.

*Mr. Irving C. Evers* argued the cause for the defendant-appellant (*Mr. John J. Sullivan, Jr.,* attorney).

*Mr. David D. Furman,* Attorney General, argued the cause for the plaintiff-respondent (*Mr. Morton I. Greenberg,* of counsel).

The opinion of the court was delivered by

PROCTOR, J. The defendant was convicted in the "Marine Navigation Court," by Frank Walsh, Jr., "Judge-Magistrate," of recklessly operating a power vessel in the tidal waters of the Manasquan River in violation of *L.* 1952, *c.* 157, § 4, *N. J. S. A.* 12:7–47, and was fined $100. He appealed to the Ocean County Court, which "affirmed" his conviction after a trial *de novo,* but imposed a fine of $25. See *R. R.* 3:10–10(*e*) as to the proper practice. The defendant then appealed to the Appellate Division and we certified the cause before hearing there.

At the trial *de novo* in the County Court, the defendant contended that the "court" in which he was first convicted was established in violation of *Art.* III, *Par.* 1 and *Art.* VI, *Sec.* VI, *Par.* 1 of the New Jersey Constitution, and that therefore his conviction was a nullity. He further argued that the complaint before that "court" was fatally defective because it was not verified by the complaining witness. As to the latter argument, the county judge held that the defendant had waived the defect in the complaint below by seeking a *de novo* review of his conviction. As to the constitutional objection, the county judge declined to make a decision, holding that he had jurisdiction to hear the cause whether or not the proceedings below were void. He pro-

ceeded to hear the cause *de novo,* and, as said above, affirmed the conviction but modified it by reducing the amount of the fine.

The defendant contends here, as before the County Court, that his conviction was void for two reasons, (1) that the complaint before the "Marine Navigation Court" was fatally defective because not verified, and therefore could not confer jurisdiction, and (2) that the statute authorizing Frank Walsh, Jr., to sit as a magistrate was unconstitutional, and, therefore, there was no validly created court with jurisdiction of the subject matter. The State argues in reply that the defendant waived his objection to the complaint by his appeal; that the "Marine Navigation Court" is constitutional, but that even if it is not, the County Court had jurisdiction to proceed in the cause, and the defendant's conviction there was valid.

■ We agree with the county judge that the alleged defect in the complaint brought against the defendant did not affect his jurisdiction of the case on appeal. Proceedings for violations of *section* 4 of the tidal waters act, *N. J. S. A.* 12:7–47, are, at least procedurally, *quasi*-criminal in nature. See *N. J. S. A.* 12:7–52, *N. J. S. A.* 12:7–34.28, and *Sawran v. Lennon,* 19 *N. J.* 606, at *page* 612 (1955). See also *State v. Yaccarino,* 3 *N. J.* 291 (1949); *City of Newark v. Pulverman,* 12 *N. J.* 105 (1953). Appeals from convictions in inferior courts for such violations are therefore governed by *R. R.* 3:10–10(*b*). That rule provides that an appeal to the County Court "shall operate as a waiver of all defects in the record, including any defect in, or the absence of any process or charge laid in the complaint." Therefore, the lack of verification of the complaint was a defect waived by the defendant by reason of his appeal to the County Court. *State v. Bigley Bros.,* 53 *N. J. Super.* 264 (*App. Div.* 1958).

■■ But the reach of the waiver provision of *R. R.* 3:10–10(*b*) extends only to procedural matters. It does not have the effect of curing a lower court's lack of juris-

diction over the subject matter, which is not conferred by the defendant's waiver or implied consent. See *State v. Hunter*, 12 *N. J. Super*. 128 (*App. Div.* 1951); *State v. Baumgartner*, 21 *N. J. Super*. 348 (*App. Div.* 1952). *Cf. State v. Rosenblum*, 102 *N. J. L.* 125 (*E. & A.* 1925). Jurisdiction over the subject matter is the power of a court to hear and determine cases of the class to which the proceeding in question belongs. It rests solely upon the court's having been granted such power by the *Constitution* or by valid legislation, and cannot be vested by agreement of the parties. *Petersen v. Falzarano*, 6 *N. J.* 447, at *page* 454 (1951); *Abbott v. Beth Israel Cemetery Ass'n of Woodbridge*, 13 *N. J.* 528, at *page* 537 (1953).

█ The State argues, however, that it is immaterial whether the "Marine Navigation Court" had jurisdiction to convict the defendant, because the County Court, which heard the case on its merits, had original jurisdiction, and therefore could have heard the case in the first instance. *N. J. S. A.* 12:7–34.31, *N. J. S. A.* 12:7–52. Granting the County Court's original jurisdiction of the cause, we are unable to see how it helps the State's argument here. The simple answer is that the County Court's original jurisdiction was never invoked either by the State or the defendant. The complaint was not addressed to it, and the State made no attempt to institute proceedings before it in any other way. The jurisdiction of the County Court was invoked only by way of the defendant's appeal, and thus it heard the cause only in its appellate capacity. Therefore, if by reason of the invalidity of the proceedings brought before it for appellate review the County Court should have set aside the conviction, it is no matter that it might as an original matter have validly convicted the defendant.

The State also argues that any lack of jurisdiction in the "Marine Navigation Court" is cured by *R. R.* 1:27D. Paragraph (a) of that rule provides, with exceptions not here pertinent, that "where any court is without jurisdiction of the subject matter of a cause * * * it shall * * *

order the cause * * * transferred to the proper court." Paragraph (b) of the rule provides that "where any cause transferable under paragraph (a) because of lack of jurisdiction over the subject matter is appealed without having been transferred, the appellate court may decide the appeal and direct the appropriate judgment to be entered in the court to which the cause should have been transferred." The State argues that if Frank Walsh, Jr., was without jurisdiction to convict the defendant, he could under paragraph (a) have transferred the cause to a court with jurisdiction, and therefore the County Court had jurisdiction to "decide the appeal and direct the appropriate judgment to be entered" in the proper court.

Paragraph (a) of *R. R.* 1:27D contemplates only that a cause may be transferred by a "court." A court exists only if it has been created by the *Constitution* or valid legislation. If it has not been so created, it is not a court at all, and thus not within the operation of the rule. If the defendant's constitutional objections to the jurisdiction of the "Marine Navigation Court" and Frank Walsh, Jr., as magistrate, are well founded, then they have no existence in contemplation of the law and therefore no authority to transfer a cause. If the objections are valid, this would not be an instance of a *de facto* judge sitting in a *de jure* court. See *State v. Pillo,* 15 *N. J.* 99, at *page* 102 (1954). *Cf. State v. Cottrell,* 117 *N. J. L.* 226 (*E. & A.* 1936).

There are two statutes that regulate the operation of power vessels in New Jersey. Although this case is concerned with only one of them, a full understanding of the problems presented here requires an examination of both of these statutes. The act for the regulation of power vessels on tidal waters in this State, the one directly involved in this case, is *Chapter* 157 of the *Laws of* 1952. *N. J. S. A.* 12:7–44 to 53. *Section* 1 of the act gives the Department of Conservation and Economic Development the power of enforcement. *N. J. S. A.* 12:7–44. *Section* 4 prohibits reckless operation of power vessels on tidal waters, the offense

for which the defendant was convicted. *N. J. S. A.* 12:7–47. *Section* 8 provides:

"Any person who shall violate the provisions of this act shall be subject to a fine not exceeding one hundred dollars ($100.00) and in default of the payment thereof, shall be subject to imprisonment for a period not exceeding ten days. Any person convicted of a second offense of the same violation shall be subject to a fine in double the amount prescribed for a first offense, and shall, in default of the payment thereof, be subject to imprisonment for a period of not exceeding twenty days." *N. J. S. A.* 12:7–51.

*Section* 9 provides:

"The Department of Conservation and Economic Development shall have the duty of enforcing the provisions of this act. The procedure for such enforcement shall be the same as in the case of other violations under Title 12 of the Revised Statutes relating to power vessels and motors and certain boats and craft operating in other than tidal waters." *N. J. S. A.* 12:7–52.

The reference in *section* 9 is to the act for regulating power vessels in non-tidal waters, which, in its present form, is *Chapter* 236 of the *Laws of* 1954. *N. J. S. A.* 12:7–34.1 to 34.35. *Section* 22 of that act prohibits reckless operation of power vessels in essentially the same terms as those of the tidal waters act. *N. J. S. A.* 12:7–34.22. *Section* 28 states that violators of *section* 22 shall be disorderly persons punishable, for a first offense, by a fine not exceeding $200, or by imprisonment up to 90 days, or both, and, for further offenses, by a fine not exceeding $500, or by imprisonment up to 6 months, or both.

*Section* 31 gives "[e]very County Court, county district court, county criminal judicial court, and every municipal court" jurisdiction to enforce the provisions of the act, and gives "every judge and magistrate of said courts" jurisdiction to "receive complaints, order arrests, issue summonses and warrants, admit to bail, and take any action required of a judge or magistrate in the enforcement of the provisions of this act within their respective territorial jurisdictions." *N. J. S. A.* 12:7–34.31.

*Section* 32 provides:

"The Commissioner of Conservation and Economic Development, the Director of the Division of Planning and Development, and the Chief of the Bureau of Navigation, and such of their assistants as shall be designated for the purpose by the commissioner, shall each be vested with all the powers of a magistrate conferred in this chapter." *N. J. S. A.* 12:7–34.32.

Frank Walsh, Jr., the "magistrate" who convicted the defendant in the "Marine Navigation Court," was at the time an assistant in the Department of Conservation and Economic Development, a part of the executive branch of the state government. *L.* 1948, *c.* 448, *Art.* I, *Sec.* 1, *N. J. S. A.* 13:1B–1. Apparently he was designated as a magistrate by the Commissioner.

The tidal waters act, *L.* 1952, *c.* 157, *N. J. S. A.* 12:7–44 to 53, contains no provisions paralleling *sections* 31 and 32 of the non-tidal waters act, discussed above. However, *section* 9 of the tidal waters act, *N. J. S. A.* 12:7–52, in its language "the procedure for such enforcement [by the Department] shall be the same as in the case of other violations  *  *  *  in other than tidal waters," adopts by reference the provisions of the non-tidal waters act that give jurisdiction to the courts specified in *section* 31, and vest in the Commissioner and his subordinates "all the powers of a magistrate" given by that act.

▌ It is obvious from the above discussion that the Legislature has not expressly created a court to be presided over by the Commissioner or employees of the Department to enforce the tidal waters act. It has only provided that the Department's procedure for enforcement shall be the same as it is in the non-tidal waters act. It is equally obvious that the Legislature has not expressly created such a court for enforcement of the non-tidal waters act. In *section* 31, it gives certain named courts jurisdiction over violations of the act. Jurisdiction to convict, fine and imprison for violation of statutory provisions resides in courts and not in persons. On the face of it, therefore, the statute does not

confer such jurisdiction on any court other than those specifically named. Nowhere in either statute is a "Marine Navigation Court" mentioned.

If the Legislature has created a special new court for the enforcement of the non-tidal waters act, and has then given that court jurisdiction over offenses against the tidal waters act, it has done so only by implication. Our reading of the statutes leaves us in grave doubt that the Legislature intended by implication to create such a special court. But we have no doubt that the Legislature intended to vest in certain members of the executive branch of the government the same powers for enforcement of the acts that it gave to certain named courts. We must conclude that this is a grant of powers that properly belong only to the judicial branch of the government, and is therefore a violation of *Article* III of the *Constitution of* 1947, which provides:

"The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."

The principle here set out has been a part of our *Federal Constitution,* by imperative implication, since its very beginning. It has been an express part of our *State Constitution* since 1844. The principle of separation of powers was applied in *Rogers v. Taggart,* 118 *N. J. L.* 542 (*Sup. Ct.* 1937) affirmed 120 *N. J. L.* 243 (*E. & A.* 1938), where it was held to be unconstitutional for a member of the Legislature to exercise judicial power by holding the office of municipal recorder.

The principle of separation of powers represents part of America's answer to the problem of concentrated and uncontrolled governmental authority, and, more particularly, in the present context, to the problem of a judiciary controlled by the agencies of government whose function is to enforce the law rather than to administer justice. We all

instinctively rebel against the concept of a court answerable in any way for its decisions to a governmental agency that appears in litigation before it. History taught the framers of our *Constitutions* that the rights of the individual against the state could best be protected by courts created independent, and insulated from interference by the other branches of government and the pressures that too-close contact with those branches would surely create. See *Mulhearn v. Federal Shipbuilding and Dry Dock Co.*, 2 *N. J.* 356, at *pages* 363–364 (1949). Montesquieu, who greatly influenced the framers of our *Federal Constitution,* is quoted by Alexander Hamilton as saying: "There is no liberty if the power of judging be not separated from the legislative and executive powers." *The Federalist,* No. 78 at *p.* 521 (Heritage Edition 1945).

The scheme established for the enforcement of the power vessel acts is inconsistent with the principle of separation of powers, insofar as it vests judicial functions in members of an executive department. The Commissioner of Conservation and Economic Development, whose function is enforcing the acts, and not administering justice, is given the power to designate employees in his Department as "magistrates" to hear and decide cases of alleged violations. These "magistrates" would have loyalty to the Department, and perhaps a natural reluctance to reject evidence brought before them by their own colleagues. Subject to the Civil Service Law, they could be removed by the Commissioner at will, *L.* 1948, c. 448, § 3, *N. J. S. A.* 13:1B–3. They are appointed from among those charged with enforcement of the act, and for all that is provided, a magistrate, sitting today to hear a complaint brought by one of his colleagues, might tomorrow bring a complaint before the same colleague then sitting as a magistrate.

It is unquestioned by the State that the function claimed for these "magistrates" is a judicial, rather than administrative, function. They hear evidence of violations and impose fines, imprison violators for nonpayment of fines, and

generally act in the same manner in the conduct of trials as a judge of a court specifically named in *section* 32 of the non-tidal waters act. *N. J. S. A.* 12 :7–34.32. The power vessel acts, in their express terms, give the authority to perform these functions only to certain named, regularly established courts, which are free of interference from outside the judicial branch. The Legislature may not constitutionally give these functions also to members of an executive department who are subject to all the influences that the separation of powers principle was established to guard against.

We therefore conclude that the defendant's conviction by a member of an executive department purportedly sitting in a court was a nullity. In the circumstances, therefore, the County Court should have dismissed the proceedings against him. The result we reach, of course, does not foreclose a new complaint in the County Court, or any other court with jurisdiction, within the period of limitations. *State v. Firth,* 103 *N. J. L.* 275 (*Sup. Ct.* 1926).

The judgment of the County Court affirming the conviction is reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.