115 N.J. Super. 352 (1971)
279 A.2d 874
IN THE MATTER OF THE PETITION OF SOUTH LAKEWOOD WATER COMPANY PURSUANT TO N.J.S.A.
48:19-17 APPEALING THE REFUSAL OF THE TOWNSHIP OF BRICK TO GRANT MUNICIPAL CONSENT TO EXTEND FRANCHISE WITHIN A PORTION OF SAID TOWNSHIP. BRICK TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, INTERVENOR-APPELLANT,
v.
SOUTH LAKEWOOD WATER COMPANY, PETITIONER-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1971.
Reargued May 24, 1971.
Submitted June 8, 1971.
Decided July 2, 1971.
*353 Before Judges GOLDMANN, LEONARD and FRITZ.
Mr. Charles E. Starkey argued the cause for appellant (Messrs. Kannen, Starkey, Turnbach & White, attorneys).
Mr. John R. Rutledge, Jr. argued the cause for respondent South Lakewood Water Company.
*354 Mr. William Gural, Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by LEONARD, J.A.D.
The Brick Township Municipal Authority (MUA), as intervenor, appeals from a decision of the Board of Public Utility Commissioners (PUC) in favor of petitioner South Lakewood Water Company (Lakewood Water) approving consents granted by the New Jersey Department of Transportation and the Ocean County Board of Freeholders for the laying of pipes and mains beneath State Highway 70 and certain county roads located in Brick Township and the constructing and maintaining of hydrants on and along these roads in order to service properties bounding on Route 70 from the Lakewood Township line to the Laurelton Circle.
The MUA contends that the PUC does not have the power to allow a water company to extend service to a municipality without the consent of that municipality.
Lakewood Water was incorporated in 1962 to service part of Lakewood Township and this franchise has since been expanded within that municipality. On December 22, 1967 Lakewood Water applied by letter to the Mayor and Council of Brick Township for consent to serve a portion of that township. On July 8, 1968 it again submitted a request for approval of an extension of its water lines into the area. Though members of the municipal governing body met with the company's representatives, no action was taken. Thereupon, Lakewood Water obtained the described county and state consents to lay its pipes. On April 3, 1969 Lakewood Water filed a petition with the PUC for approval of these consents and for authority to proceed. On April 24, 1969, before any PUC hearings were held, the MUA was formed and it was stipulated that it could participate in the hearings as an intervenor in place of the township.
*355 In June 1970, following extended hearings, the PUC approved the consents granted to use the county roads and State Highway Route 70. In effect, this permitted Lakewood Water to extend service to Brick Township even though the latter had never consented.
The need for municipal consent to lay pipes in other than municipal streets was obviated by N.J.S.A. 48:19-17 which states:
Each water company may lay its pipes beneath such public roads, streets and places as it may deem necessary for its corporate purposes, free from all charge to be made by any person or body politic whatsoever for such privilege, and may also construct and maintain hydrants on and along such roads, streets and places, provided that the pipes shall be laid at least 3 feet below the surface and shall not in anywise unnecessarily obstruct or interfere with the public travel or damage public or private property.
The consent of the public body charged with the repair and maintenance of such public roads, streets and places shall first be obtained.
If such public body shall refuse or fail to give its consent, the water company may appeal to the Board of Public Utility Commissioners of the State of New Jersey. A hearing thereon shall be had on notice to all parties in interest, who shall be afforded an opportunity to be heard. If, after such hearing the Board of Public Utility Commissioners shall determine that the installation of such pipes or hydrants is reasonably necessary for the service, convenience or welfare of the public, the water company shall be authorized to proceed in accordance with such determination.
Since in the instant case no municipal roads were to be used, Lakewood Water did not need the township's consent to lay pipes.
N.J.S.A. 48:2-14 reads in pertinent part:
No privilege or franchise granted after May first, one thousand nine hundred and eleven, to any public utility by a political subdivision of this state shall be valid until approved by the board. Such approval shall be given when, after hearing, the board determines that the privilege or franchise is necessary and proper for the public convenience and properly conserves the public interests. * * *
The PUC, as well as all the parties, followed the policy that the above statute must be read in pari materia with N.J. *356 S.A. 48:19-17, cf. Deptford Tp. v. Woodbury Ter. Sewerage Corp., 54 N.J. 418, 424 (1969), and therefore PUC approval was necessary. Following the hearings, the PUC concluded that it was in the public interest that the proposed extension of water service be approved.
N.J.S.A. 40:14B-61 of the Municipal Utilities Authorities Law provides: "No facilities for the distribution of water within a district shall be constructed unless the municipal authority shall give its consent thereto and approve the plans and specifications therefor." The PUC ruled that this statute was not applicable in the instant case since the MUA was established "subsequent to the filing of the petition  as well as the dates on which the petitioner sought the township's approval to serve the proposed service area." We agree. The stipulation allowing MUA to participate cannot be construed as an agreement that it was in existence at the crucial time.
However, in making this ruling, the PUC gave no consideration to N.J.S.A. 48:19-20, which sets forth that:
Every * * * water company incorporated under the law of this State, may add to and extend its works to and within any municipality to such extent as may be necessary to carry out its corporate purposes, provided municipal consent is obtained and approved by the Board of Public Utility Commissioners, * * *.
Nothing in this section shall empower any company to supply or furnish water within the corporate limits of a municipality of this State owning or controlling its water supply, without the permission of such municipality.
This act clearly establishes that municipal consent is a prerequisite to any extension of service by a water company to territory within its jurisdiction.
The MUA is the alter ego of the municipality, "a means of discharging local governmental responsibilities for the welfare of the inhabitants of the community." Jordan v. Zidel, 40 N.J. 244, 248 (1963). That being so, the MUA had the same authority as Brick Township. Though in the instant case MUA consent was not necessary under N.J. *357 S.A. 40:14B-61, nevertheless, some form of consent from the local governing body was mandatory pursuant to N.J.S.A. 48:19-20. Here, the MUA was acting in place of the township and voluntarily intervened in the proceedings. Thus, for our purposes we consider it and the township to be one and the same. Though normally, the PUC has no jurisdiction over municipal utility authorities, In re Glen Rock, 25 N.J. 241, 245-246 (1957); N.J.S.A. 48:2-13, under the existing circumstances MUA was bound by the PUC determination.
We now turn to the critical issue as to whether the PUC can review a refusal of municipal consent to extend services within its boundaries under N.J.S.A. 48:19-20. Preliminarily, we note that although the record does not contain an actual refusal by the township, its conduct was tantamount thereto.
This statute contains no specific provisions for appeal to the PUC from a municipal refusal to grant such permission. In determining whether to acquiesce the municipality has a broad area of discretion. On the other hand, it is plain that the Legislature did not design to vest in the municipality the authority to absolutely veto every request for extension of service. Such a refusal, like any other municipal decision, may be reviewed by the courts in an action in lieu of prerogative writs in the event it is the product of fraud, arbitrary action or palpable abuse of discretion. Newark v. N.J. Turnpike Authority, 7 N.J. 377, 381-382 (1951); see Hackensack Water Co. v. Ruta, 3 N.J. 139, 146-147 (1949).
A judicial review of an alleged arbitrary refusal of consent by Brick Township to allow Lakewood Water to extend service would involve matters identical to those which the PUC have already examined in approving Lakewood Water's petition. Since both parties agree that installation of an adequate water system is needed, the only issue that would be involved, as it was before the PUC, would be the advisability of having the service of Lakewood Water rather than the MUA. So that in either forum, the fundamental question *358 is which of the two competing water services would better serve the public necessity and welfare. See Aldrich Water Co. v. Sprinkle, 70 N.J. Super. 134, 140 (Law Div. 1961). In the first instance, it is better that such a determination be made by the administrative agency with its great store of expert knowledge.
"Our courts have consistently held that the Legislature in Title 48 intended to delegate the widest range of regulatory powers over public utilities to the PUC." Deptford Tp. v. Woodbury Ter. Sewerage Corp., supra, 54 N.J. at 424.
* * * [T]he public interest in proper regulation of public utilities transcends municipal or county lines, and * * * a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the State * * * [In re Public Service Electric and Gas Co., 35 N.J. 358, 371 (1961)]
A recognition of this legislative intent is demonstrated in the 1966 amendment to N.J.S.A. 48:19-17 (L. 1966, c. 233). Therein, water companies were given the express right to appeal to the PUC from the refusal or failure of a municipality to give its consent to the laying of pipes under and along its roads and streets. The legislative statement attached to this amendment in its essential part declared:

* * * * * * * *
Notwithstanding the decision of the Supreme Court in Hackensack Water Company v. Ruta, 3 N.J. 139 (1949) which states that a municipality may not arbitrarily or capriciously refuse its consent, public bodies might delay service to the public by refusing their consent and thus forcing the water company to resort to court action.
The proposed amendment permitting the water company to present its appeal to the Board of Public Utility Commissioners upon refusal or failure of the public body to give its consent, would provide a speedy determination of the controversy.
The public is protected since the board is required to make a finding that the installation is reasonably necessary for the service, convenience and welfare of the public.

* * * * * * * *
*359 Considering this legislative intent and the established judicial policy, we find that even though no express provision is made in N.J.S.A. 48:19-20, the PUC may first review the refusal of a municipality to give the requisite statutory consent. Of course, this determination may be judicially reviewed. See R. 2:2-3(a)(2).
Despite the fact that the PUC reviewed Lakewood Water's application to extend service only under the provisions of N.J.S.A. 48:2-14, we conclude that its determination is as valid as if it had reviewed the refusal of consent by Brick Township under N.J.S.A. 48:19-20. In effect, the PUC's decision that the laying of Lakewood Water's pipes in the roads should be allowed as "necessary and proper for the public convenience," was a finding that at the time Lakewood Water was better qualified to serve the community. Taking into account the speed in which service could be established, the rates to be charged, and other financial and technical considerations, the PUC decided in effect that the municipal refusal of consent was not warranted and that Lakewood Water should be allowed to serve the area. The record substantially and reasonably supports such a conclusion. In re Greenville Bus Co., 17 N.J. 131, 137-138 (1954).
Judgment affirmed.