IN THE MATTER OF THE PETITION OF SOUTH LAKEWOOD WATER COMPANY PURSUANT TO R. S. 48:19–17 APPEALING THE REFUSAL OF THE TOWNSHIP OF BRICK TO GRANT MUNICIPAL CONSENT TO EXTEND FRANCHISE WITHIN A PORTION OF SAID TOWNSHIP.

SOUTH LAKEWOOD WATER COMPANY, PETITIONER-RESPONDENT, v. TOWNSHIP OF BRICK, RESPONDENT, AND BRICK TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, INTERVENOR-APPELLANT, AND BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Argued January 24, 1972—Decided July 6, 1972.

232

Mr. *Charles E. Starkey* argued the cause for intervenor-appellant (*Messrs. Kannen, Starkey, Turnbach & White,* attorneys; *Mr. Starkey,* on the brief).

Mr. *John R. Rutledge, Jr.* argued the cause for petitioner-respondent.

Mr. *William Gural,* Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

No appearance for respondent Township of Brick.

The opinion of the Court was delivered by

HALL, J. This litigation concerns the right to furnish water service to a portion of Brick Township (Township), Ocean County, as between South Lakewood Water Company (South Lakewood), a privately owned utility desirous of extending its lines from an adjacent municipality, and Brick Township Municipal Utilities Authority (Authority), a local governmental agency created to provide water and sewer service to the Township. On South Lakewood's petition, the Board of Public Utility Commissioners (Board) decided in its favor, although neither the Township nor the Authority had consented to the extension. The Appellate Division affirmed on the Authority's appeal. 115 *N. J. Super.* 352 (1971). We granted its petition for certification. 59 *N. J.* 291 (1971).

Two important legal questions are presented, both concerning the extent of the Board's power. The first is

whether, quite apart from the effect of the creation of a municipal utilities authority, the Board has the power to override a municipality's refusal to grant a private water company the right to operate, *i. e.* a franchise, within its borders. The second is the effect of the creation of a municipal utilities authority and whether the Board has the power to override an authority's refusal to consent to a private water company's commencement or extension of operations within the authority's territory. These questions arise in the following factual setting.

South Lakewood is a wholly owned subsidiary of Leisure Technology Corporation which operates a retirement community, as well as other land development enterprises, in the eastern end of Lakewood Township, a municipality adjoining Brick Township on the west. It was incorporated in 1962 and furnishes water service to the area in which these enterprises are located under franchises granted to it by Lakewood Township and approved by the Board. In addition, the president of South Lakewood and Leisure Technology Corporation is affiliated with other companies which control considerable property along State Highway Route 70, across the boundary in Brick Township. Substantial business establishments, located upon this and adjacent land and comprising the township's largest commercial area and its greatest concentration of heavy water users, now obtain their water supply from private wells. It is this area that South Lakewood desires to serve by extending its mains from Lakewood Township. Concededly, the object is to enable South Lakewood to make more money by serving this profitable section and to increase the value of the lands to be served.

Brick Township is a 26 square mile municipality, which has experienced tremendous growth, chiefly through residential developments. Its population has increased almost 30 times in the last three decades, and in the 1960–70 span went from 16,299 to 35,057. It has never had a township-wide water or sewer system and without a doubt it has

reached the point where both are necessary. Presently the only public water available is furnished to scattered developments by a handful of small water companies. Since at least 1965 it has been working on plans for a unified municipal water supply system, with an associated sewer system, to service the township. In that year a firm of retained consulting engineers prepared a master plan for that purpose, and the plan was updated in 1969.

In December 1967 and July 1968 South Lakewood applied to the township governing body for a consent to serve the previously mentioned portion of the township and approval of an extension of its lines into the township for that purpose — i. e., for a franchise to operate therein. Discussions were had, but the governing body never took any action. It appears to be conceded that the inaction amounted to a refusal of consent. The application included an offer to enter into an agreement giving the township the right to purchase at any time any system South Lakewood might install. Thereafter South Lakewood obtained the consent of the State Department of Transportation and the Ocean County Board of Freeholders to lay its pipes beneath state and county highways bounding the proposed area. (While the area contained township roads, service apparently did not, at least initially, involve laying pipes beneath them, so the consent of the township governing body was not needed for this purpose.)

On April 3, 1969, South Lakewood filed with the Board the petition which commenced the instant litigation. As the caption of this case indicates, it purported to be an appeal from the refusal of Brick Township to grant it a franchise to extend its lines and furnish service to the described area and claimed that refusal was unreasonable and contrary to the public interest. The relief sought was a Board determination that the proposed service was "reasonably necessary for the service, convenience or welfare of the public" and a grant of authority to proceed.

Three weeks later, on April 24, the Authority became operative.[1] It was created as a local governmental agency, under the municipal utilities authorities law, *N. J. S. A.* 40:14B-1, *et seq.*, to construct and operate a water system, and associated sewer system, to serve substantially all of the Township, including the area here involved. It was permitted to intervene before the Board and, along with the township governing body, vigorously opposed the relief sought by South Lakewood. South Lakewood did not seek the Authority's consent to extend its mains into the township; *N. J. S. A.* 40:14B-61 provides that "[n]o facilities for the distribution of water within a district shall be constructed unless the municipal authority shall give its consent thereto and approve the plans and specifications therefor." It is evident, however, that consent would have been refused had it been sought, so that the situation may be considered as if there had been a formal application and refusal. The Board, as well as the Appellate Division, however, treated the case on the basis that since the Authority was not in existence at the time South Lakewood sought the franchise nor when it filed its petition with the Board, its creation had no superseding or special effect, and so they held that the cited section had no application.

Consequently the Board dealt with the case factually as if it were a contest between two competing water utilities, each seeking to serve the same new territory. The hearings, which were not completed for about a year, dealt principally with the physical aspects of South Lakewood's proposal and the Authority's plans. The former's proofs sought to demonstrate demand, water capacity to serve the area and ability to extend its mains and provide the service within 30 days. The Authority's opposition was on a much broader plane. It

---

[1]The briefs of the parties do not agree as to whether the Authority was created by an ordinance adopted on that date or on a date about two months earlier. In any event, its members were appointed and it commenced to function on the April date.

showed a long range plan for a system to serve the whole township, including acquisition of the private water companies now serving small segments. The first stage of the plan called for development of the well field, treatment plant, and storage tank and the installation of distribution mains to service first, in about 15 to 18 months, the commercial area in question. The well field is near this area and would require mains to be run through it to reach other parts of the township. Testimony at the last hearing evidenced steady progress on this first stage. The Authority strongly urged that granting South Lakewood's petition would interfere with the development of its master plan, would cause unnecessary expense by reason of the laying of duplicate mains, would result in the loss of a profitable heavy use section thereby having financial consequences on the cost of service to township residents, and might well require the Authority to pay a premium in the future to acquire the proposed South Lakewood installations. The Board in its decision as to the merits gave no consideration to the Authority's plans and proofs or to the welfare of the township as a whole. In holding in favor of South Lakewood it simply rested upon a demand for water service in this commercial area and the claimed ability of South Lakewood to furnish service within 30 days. The Appellate Division simply said, on this aspect of the case, that the record substantially and reasonably supported the Board's conclusion.[2]

---

[2] If the case were to turn on this issue, assuming the Board's power to act at all and that the creation of the Authority had no automatic superseding effect, we would have to say that this approach and conclusion are fundamentally wrong. The Authority's existence, purpose and plans for the whole township are not to be disregarded as if it were simply another water company. The overall good of and the impact upon the entire municipality, present and future, is entitled to primary consideration and preference over the situation of a few properties, the desire of an outside utility to serve them and its ability to do so sooner.

It should also be noted that the Appellate Division, after the Board's decision, stayed its effect as to both South Lakewood and

I

*The Power of The Board of Public Utility Commissioners to Override the Refusal of a Municipality to Grant a Franchise to a Water Company*

This first question derives from the basis upon which the Board and the Appellate Division approached and decided the case, *i. e.,* that the creation of the Authority had no superseding or special effect because this occurred after South Lakewood had applied to the Township for a franchise to operate in the area involved. The solution of the question depends upon the meaning and effect of pertinent provisions of the public utilities law relating to water companies as it originally existed and after amendments in 1962 and 1966. The Board and South Lakewood contend that these provisions empower the Board to award the franchise despite the Township's refusal. (Consideration of the provisions is also involved in the second question concerning the effect of the creation of the Authority.)

▉▉ The statutory sections in question must be viewed in the light of some broad underlying precepts. It has long been established that a public utility may not operate without a franchise granting such a right. This was true even before public utilities were made subject to regulation by a governmental agency. Generally speaking, a franchise is a privilege of a public nature conferred by government on an individual or corporation to do that "which does not belong to the citizens of the country generally by common right." In the case of public utilities, it means permission to *operate* a business, peculiarly of a public nature and generally monopolistic. (We use "franchise" throughout in this sense.) The power to grant the right is an inherent incident

---

the Authority so that neither could lay mains and service the disputed area pending the final outcome of the litigation. This court later modified the stay against the Authority so as to permit it to lay mains through the area, but only for the purpose of serving other portions of the Township.

of sovereignty and resides in the legislature. A grant of a franchise is a legislative act. The legislature may delegate the power, and very frequently does, to affected municipalities. *See* generally, 36 *Am. Jur. 2d, Franchises,* §§ 1–13, pp. 722–736; 43 *Am. Jur., Public Utilities and Services,* § 16, p. 581; *Rhyne, Municipal Law,* § 24–3, p. 508 (1957).

In New Jersey, until 1875 public utilities of all kinds generally were granted franchises at the state level by special legislative charter. In that year a constitutional amendment forbade the passage of private, special or local laws granting to any corporation, association or individual any exclusive privilege, immunity or franchise. (The provision is currently found in *N. J. Const.* (1947), Art. IV, § 7, par. 9(8).) Since then, separate general statutes have been passed from time to time particularly dealing with the incorporation and functioning of various kinds of utilities (*e. g.,* gas companies, *L.* 1876, *c.* 192, p. 309, *Rev.* 1877, p. 460; water companies, *L.* 1876, *c.* 193, p. 318, *Rev.* 1877, p. 1365; electric light, heat and power companies, *L.* 1896, *c.* 189, p. 322; sewerage companies, *L.* 1898, *c.* 210, p. 484). Other statutes of more recent vintage have dealt with certain transportation utilities such as autobusses, jitneys, street railways and taxicabs. All were first brought together under one heading by the *Revised Statutes* of 1937, Title 48, Public Utilities. They all proceed upon the express or implied view that a franchise to operate is required and that it is to be granted by action of the affected municipality, thus evidencing a legislative policy of delegation of that legislative function to the local entity directly concerned with the overall government of the area involved. The various provisions with respect thereto in the original statutes were by no means uniform; the 1937 revision and subsequent amendments have done substantially nothing to make them so; the terminology used is frequently confusing; and they remain a hodge-podge much in need of clarification, cohesion and uniformity. We need be concerned, how-

ever, only with the particular provisions contained in the chapter of the utilities law relating to water companies.

Superimposed upon these varied particular provisions as to each kind of utility, and in line with the thesis that the Legislature intended to delegate the granting of franchises to affected local governmental units, is the broad requirement of Board approval of granted franchises (as well as other privileges granted municipally), contained in the general utilities law which created the present Board, *L.* 1911, *c.* 195, p. 374, now *N. J. S. A.* 48:2–14, which reads as follows:

> No privilege or franchise granted after May first, one thousand nine hundred and eleven, to any public utility by a political subdivision of this state shall be valid until approved by the board. Such approval shall be given when, after hearing, the board determines that the privilege or franchise is necessary and proper for the public convenience and properly conserves the public interests. In granting its approval the board may impose such conditions as to construction, equipment, maintenance, service or operation as the public convenience and interests may reasonably require.
>
>    \*  \*  \*

The present overall scheme in this state therefore is that, while the power to grant a franchise to operate reposes in the affected municipality, the franchise is not valid without Board approval. If the Board disapproves, the municipal action is thereby rendered void. There is no express provision in the general utilities law, nor, so far as we have been able to ascertain, in the chapters dealing with particular utilities, empowering the Board to grant a franchise in the first instance or to overturn a municipal denial of a request for such a grant. While the Board argues to the contrary here, it previously took the position that it had no authority to override a municipal refusal to grant a franchise to a water company, because the Legislature had not given it that power. *See In re Aldrich Water Company,* 1 *N. J. P. U. C. 2d* 1 (1962).

The Board and South Lakewood now contend that a 1966 amendment to a section of the law dealing with consent to the use of streets by water companies bestowed the power on the Board to override municipal refusal to grant a water company franchise. (It is to be observed that, since no similar amendment has been made in the chapters relating to other utilities, the asserted result could apply only to water companies.) Consideration of the contention requires a summary of the pertinent water company provisions (derived from *L.* 1876, *c.* 193, p. 318) as set forth in the 1937 revision, *N. J. S. A.* 48:19–1 *et seq.*, and the amendments made thereto in 1962, as well as that adopted in 1966.

Referring first to the provisions in their form before amendment, *N. J. S. A.* 48:19–1 to –4 specified the special method to incorporate a water company, including, by *N. J. S. A.* 48:19–2, a statement in the certificate of incorporation of the municipality to be served.[3] This statement establishes the purpose of the corporation to be the providing of water service in the specified municipality. *N. J. S. A.* 48:19–3 further required the consent of that municipality to the incorporation. *N. J. S. A.* 48:19–3 provided that "[e]ach company organized under this chapter . . . may lay such pipes and conduits for water at such times and in such places as shall be necessary and proper to enable the company to carry into effect the purposes of its incorporation." *N. J. S. A.* 48:19–17 authorized each such company to "lay its pipes beneath such public roads, streets, and alleys as it may deem necessary for its corporate purposes, free from all charge . . ., provided that the consent shall be obtained of the corporate authorities of the munici-

---

[3] While the sections were limited to water companies to serve municipalities of not more than 15,000 population, we understand that as a matter of practice, and perhaps by reason of other statutory sections, the Board applied them to all new water companies. Further we understand that, as a matter of practice, the certificate of incorporation could properly include more than one municipality or less than the whole of a single municipality as the area to be served.

pality through which the pipes may be laid." It further directed that the pipes "shall be laid at least three feet below the surface and shall not in anywise unnecessarily obstruct or interfere with the public travel or damage public or private property." *N. J. S. A.* 48:19–20 provided that every water company "may add to and extend its works to such extent as may be necessary to carry out its corporate purposes," but that it shall not be empowered "to supply or furnish water within the corporate limits of a city of this state owning or controlling its water supply."

The meaning and intent of these original provisions seem quite clear in the light of pre-amendment cases dealing with them. The franchise to operate was granted by the municipal consent to the incorporation of the company for the purpose of serving the municipality, required by *N. J. S. A.* 48:19–3. *See Davis v. Town of Harrison,* 46 *N. J. L.* 79 (Sup. Ct. 1884); *Inhabitants of the Township of Franklin v. Nutley Water Company,* 53 *N. J. Eq.* 601, 605 (Ch. 1895); *In re Board of Fire Commissioners, Fire District No. 3, Piscataway Township,* 27 *N. J.* 192, 196 (1958); *Aldrich Water Company v. Sprinkle,* 70 *N. J. Super.* 134, 139 (Law Div. 1961). The franchise included a direct legislative grant, set forth in *N. J. S. A.* 48:19–13, of the general power to lay pipes "in such places as shall be necessary and proper." *See Hackensack Water Company v. Ruta,* 3 *N. J.* 139 (1949); *Port of New York Authority v. Hackensack Water Company,* 73 *N. J. Super.* 332, 337–338 (Law Div. 1962), affirmed 41 *N. J.* 90 (1963). By virtue of *N. J. S. A.* 48:19–17, this broad right could not be exercised, however, as to laying pipes in public roads and streets, without the further consent of the municipality.

The purpose of this additional consent has consistently been stated to be to require a previously franchised company to submit to reasonable local regulations as to the manner of laying the pipes and thereafter maintaining them in the area covered by its franchise so as to protect the public against interference with ordinary use of and damage to the streets.

*See Davis v. Town of Harrison, supra* (46 *N. J. L.* at 84–85); *Atlantic City Water Works Company v. Consumers Water Company,* 44 *N. J. Eq.* 427, 432–433 (Ch. 1888); *Hackensack Water Company v. Ruta, supra* (3 *N. J.* at 145). (The last cited case held this consent could not be arbitrarily refused and, if so, the refusal could be overridden by an action in lieu of prerogative writ.) Modern legislative recognition of this purpose of *N. J. S. A.* 48:19–17 is found in the statement annexed to the bill which became the 1966 amendment, *L.* 1966, *c.* 233, p. 1118, to this street use section (shortly to be detailed), reading: "The purpose of the provisions of this section requiring municipal consent is to protect the public against unnecessary obstruction of roads or damage to property." 1966 *N. J. Session Law Service,* p. 643. The point to be stressed is that the pre-amendment form of *N. J. S. A.* 48:19–17 relating to street use had nothing to do with and was no part of the granting of a franchise to a water company to operate in a municipality. That grant was accomplished by the municipal consent to the incorporation of the company (or before 1875 by special legislative charter).[4]

The amendments made by *L.* 1962, *c.* 198, §§ 191–198, pp. 1025–29 and *L.* 1966, *c.* 233, p. 1118 have not previously been judicially considered. We mention first those adopted in 1962 as part of extensive changes made in all sectors of the public utilities law. As to water companies (and other utilities as well), the special incorporation provisions, *N. J. S. A.* 48:19–1 to –4, were repealed and, by

---

[4]*N. J. S. A.* 48:19–20, permitting a water company to "add to and extend its works to such extent as may be necessary to carry out its corporate purposes" made no mention of the necessity of municipal consent and so presumably referred only to additions or extensions within a franchised area. *Cf. City of Paterson v. West Orange Water Company,* 87 *N. J. L.* 538, 540 (E. & A. 1915). It would appear, although the statute was silent, that the sense of it indicates that if an already incorporated water company desired to extend operations beyond its franchised area, an additional franchise would have to be obtained from the affected municipality.

contemporaneous amendment of *N. J. S. A.* 14:2–2 (expressly saved from repeal, through the enactment in 1968 of the new Business Corporation Act, by *N. J. S. A.* 14A:16–2), they were thereafter to be incorporated under the general corporation law. This repeal had the further effect of doing away with the requirement of municipal consent to the incorporation of a new water company, *i. e.,* the former method of granting it a franchise. We believe that the Legislature intended that *N. J. S. A.* 48:19–20, as amended, become the section covering the granting of franchises, although a partial gap exists. That section, it will be recalled, originally only authorized additions or extensions within a franchised area. *See* footnote (4), *supra.* The 1962 amendment thereof broadened the section to authorize any water company to add to or extend its works "to and within any municipality . . . [*i. e.,* outside its originally franchised area], provided municipal consent [*i. e.,* a franchise] is obtained and approved by the Board of Public Utility Commissioners . . . ." This was obviously the section under which South Lakewood applied to Brick Township in 1967 and 1968 for a franchise to extend its lines to the commercial area involved. (The amendment also allowed a water company to supply or furnish water within a municipality owning or controlling its water supply with the permission of such municipality. Previously private utilities could not operate at all in such municipalities.) As a result of the 1962 amendment, neither *N. J. S. A.* 48:19–20 nor any other section provided the method for a new water company to obtain a franchise, as distinct from an already incorporated one seeking to extend its operations beyond its originally franchised area. Although this case involves an extension of service rather than formation of a new water company, we ought to say that we think the Legislature intended, and so it must be implied, that a new company must obtain a franchise at its inception from the

municipality it desires to serve. The Board apparently takes the same view since its current Rules of Practice, *N. J. A. C.* 14:1–6.6, require a new company to file with it a certified copy of its franchise in seeking approval thereof. The 1962 amendments make no pertinent changes to any other sections of the water company law, including *N. J. S. A.* 48:19–17, the street use section, thereby indicating that the intent and purpose of that section, above detailed, were to remain as before. There is nothing in the 1962 amendments in any way indicating a legislative intent to empower the Board to override a municipal refusal to grant a franchise, either at the inception of a new company or upon a proposal to extend service beyond a franchised area.

The 1966 amendment, *L.* 1966, *c.* 233, p. 1118, of the street use section, *N. J. S. A.* 48:19–17, made two substantial changes therein. The first provided that consent of "the public body charged with the repair and maintenance of . . . public roads, streets and places" is to be obtained before laying water pipes beneath such public property, instead of, as formerly, the consent of the municipality through which they are to be laid. The second change added this language:

> If such public body shall refuse or fail to give its consent, the water company may appeal to the Board of Public Utility Commissioners of the State of New Jersey. A hearing thereon shall be had on notice to all parties in interest, who shall be afforded an opportunity to be heard. If, after such hearing the Board of Public Utility Commissioners shall determine that the installation of such pipes . . . is reasonably necessary for the service, convenience or welfare of the public, the water company shall be authorized to proceed in accordance with such determination.

The Board and South Lakewood rely on these changes, particularly the second one, to support their contention that the Board is now authorized to override a municipal refusal to grant a franchise. Their view rests on the thesis that this street use section has thereby become the franchise granting

section; *i. e.*, that consent to lay pipes in public property constitutes a water company's franchise to operate.[5]

We think the contention is unsound for several reasons. It flies in the face of the construed purpose and history of *N. J. S. A.* 48:19–17 in its original form, which we have earlier detailed. Also, the statement annexed to the bill which became this 1966 amendment (*see* 1966 *N. J. Session Law Service,* p. 643), and which we previously quoted in part, strongly indicates no intended change in the purpose of this section, *i. e.*, protection of the public streets from obstruction and damage. The language of the amendment itself is further evidence of this in its specification that the required consent to street use be that of the public body "charged with the repair and maintenance" thereof rather than the body entrusted with the overall government. Moreover, the statement goes on to refer to *Hackensack Water Company v. Ruta, supra* (3 *N. J.* 139) as indicating an example of the evil intended to be alleviated by the amendment. In *Ruta* the refusal of a franchise to operate was not involved; the arbitrary municipal conduct was

[5]The present contention of the Board is somewhat different than that taken in its decision in this case. While South Lakewood's petition asked the Board to overturn Brick Township's refusal to grant it a franchise, the Board in its order did not do so, but rather, treating the street consents of the State Department of Transportation and Ocean County as in effect grants of the necessary franchise, simply approved those consents under *N. J. S. A.* 48:2–14.

The Appellate Division opinion (115 *N. J. Super.* 352), as we understand it, is ambivalent on the question. It appears correctly to treat *N. J. S. A.* 48:19–20, rather than *N. J. S. A.* 48:19–17, as the franchise granting section, without any provision for Board power to override a municipal refusal. It goes on to say that a court would, however, review such a refusal and grant relief (we express no view on this proposition; compare *Aldrich Water Company v. Sprinkle, supra* (70 *N. J. Super.* at 139)); that the same factors would be involved in such a suit as the Board, a more expert agency in such situations, passed upon here; and that so the Board's decision should stand. It further proceeds to find, however, by a course of reasoning which we cannot follow, that the Legislature intended that the Board have the power to override a municipal franchise refusal.

denial of a consent to extend water lines in an already franchised area except upon irrelevant conditions. Again, it appears to us to make no sense to delegate the legislative power to grant a franchise to a utility to operate in an area to public bodies concerned only with street repair and maintenance. We cannot agree that the Legislature intended to delegate the franchise power, in part at least, to a body which has as little interest in the overall welfare of the municipality as the State Department of Transportation, because it happens that some pipes must be laid in a state highway. And the view espoused would require a water company to obtain its franchise to operate from three different bodies, state, county and municipal, where, as frequently happens, pipes are required in roads controlled by each.

In sum, we are satisfied that the Legislature did not intend by the 1966 amendment of the street use section to make that section the franchise granting provision and to empower the Board to override a municipal franchise refusal. As we have indicated, the amendment had a much more limited purpose. We recognize, of course, that the public utilities law is to be construed on the basis that the Legislature intended to delegate to the Board the widest range of regulatory power over public utilities and that the powers granted to it are to be read broadly. *Township of Deptford v. Woodbury Terrace Sewerage Corporation*, 54 *N. J.* 418, 424 (1969). But here we are concerned with the legislative will relating to a fundamental sovereign power— the granting of franchises to operate in a field of great public interest — and, when the legislative history and statutory language make the intent with respect thereto as clear as we believe it to be here, we can see no proper basis or sound reason to conclude otherwise. While we believe the Legislature could have delegated the power to grant franchises, or given the right to override municipal refusals, to the Board, it has not done so.

## II

### *The Effect of the Creation of the Municipal Utilities Authority*

Both the Board and the Appellate Division held, as we have earlier stated, that the creation of the Authority had no effect on this controversy because it was not in existence at the time South Lakewood sought the franchise from the Township nor until three weeks after it filed its petition with the Board. South Lakewood does not here strongly urge this view. It is obvious to us that both lower tribunals were wrong in taking this position.

The situation is substantially similar to one in which state or local legislation affecting a cause is altered during the litigation. The law is settled that when such a change occurs, the disposition of the case is determined by the latest enactment. *S & L Associates, Inc. v. Washington Township,* 35 *N. J.* 224, 227 (1961) ; *Borough of Little Ferry v. Bergen County Sewer Authority,* 9 *N. J.* 536, 547 (1952), cert. denied, 344 *U. S.* 865, 73 S. Ct. 105, 97 *L. Ed.* 670 (1952). Here the Township's legislative creation of the Authority and its activation shortly after South Lakewood's petition was filed made a very substantial change in the whole scene, which must be given full consideration and appropriate effect, especially in the light of the positive declaration of the municipal utilities authority law, *N. J. S. A.* 40 :14B–61, that no facilities for the distribution of water within an authority's district shall be constructed unless the authority gives its consent thereto.

Assuming this to be so and upon the thesis that the Authority here refused its consent to South Lakewood's extension in the Township, the Board urges that it nonetheless has the power to override the refusal. Viewing this case as an application for that purpose, it asserts that its decision should stand. The argument in support of that claimed result follows the same line as that just discussed with respect

to the power to override the refusal of a municipal governing body to grant a franchise, *i. e.,* the 1966 amendment to the street use section, *N. J. S. A.* 48:19–17, bestows the power. As far as that argument is concerned, we disagree for the reasons previously given. (We do not reach the question whether an authority's refusal can be reviewed judicially by an action in lieu of prerogative writ; *see* footnote (5), *supra.*)

This leads to the remaining issue of what effect should have been given by the Board (and the Appellate Division as well) to the creation and interposition of the Authority. The answer seems plain, and derives from the extent of the Board's basic jurisdiction. It is thoroughly settled in this state that the Legislature has not conferred any jurisdiction in the Board to regulate water utilities operated by a municipality under powers granted by *N. J. S. A.* 40:62–47 *et seq.,* as distinct from those privately owned, except in certain instances where such a municipality furnishes water to the residents of another. *Woodside Homes, Inc. v. Town of Morristown,* 26 *N. J.* 529, 537–539 (1958); *In re Borough of Glen Rock,* 25 *N. J.* 241 (1957).

The same limitation of jurisdiction must apply to municipal utilities authorities created pursuant to *N. J. S. A.* 40:14B–1 *et seq.,* which permits and encourages (*see N. J. S. A.* 40:14B–2, Policy) municipalities to create independent agencies to provide municipal water and sewer services. Such an authority is the *alter ego* of the municipality with broad delegated powers to supply these essential public needs. *Jordan v. Zidel,* 40 *N. J.* 244, 247–248 (1963); *Retsky v. Municipal Utilities Authority,* 91 *N. J. Super.* 74, 79 (Law Div. 1966). In effect, the enabling statute confers a legislative franchise upon a municipal authority to furnish water and sewer service, exclusive except with its consent, to the municipal area specified in the creating ordinance. It is significant that, so far as we can see, the municipal utilities authority law gives the Board no power with respect to such an authority except when it proposes

to sell water at retail in another municipality (not here involved). *N. J. S. A.* 40:14B–20(6). In the light of all this, it certainly follows that the Board has no jurisdiction to deal with the refusal of an authority to consent to an extension of service into its territory by a private utility and that, when the Board here learned of the existence of the Authority, it should have terminated the proceeding before it and dismissed South Lakewood's petition.

The judgment of the Appellate Division and the order of the Board of Public Utility Commissioners are reversed and the petition of South Lakewood Water Company to the Board is dismissed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO—5.

*For affirmance*—None.