CALDWELL TERRACE APARTMENTS, INC., A NEW JERSEY COR-
PORATION, PLAINTIFF–RESPONDENT, CROSS–APPELLANT,
v. TOWNSHIP OF BOROUGH OF CALDWELL AND THE RENT
LEVELING BOARD OF THE TOWNSHIP OF THE BOROUGH
OF CALDWELL, DEFENDANTS–APPELLANTS, CROSS–RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 21, 1988—Decided April 14, 1988.

Before Judges DREIER and BAIME.

*Peter Guarino* argued the cause for appellant (*McCormack & Petrolle,* attorneys; *Thomas M. McCormack* and *Peter Guarino,* on the brief).

*Gary D. Gordon* argued the cause for respondents (*Geltzeiler, Mandel, Berezin & Feinstein,* attorneys; *Gary D. Gordon,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

The parties have cross-appealed from a decision rendered in the Law Division. The Caldwell Rent Leveling Board (interchangeably referred to as the Rent Review Board and the Rent Leveling Board) assessed a $19,250 penalty against plaintiff based upon plaintiff's failure to have common-area smoke de-

tectors installed in its 110–unit apartment building. The penalty was assessed on the basis of $175 per unit. Plaintiff sought review in the Law Division by an action in lieu of prerogative writs. The judge in a letter opinion found that there was but one violation, and amended the penalty for that violation to $1,000. Defendant appeals contending that the original penalty should be enforced. Plaintiff cross-appeals contending that no penalty could properly have been assessed by the Board. We determine here that the penalty was improperly imposed by the Board and that the procedures employed at the municipal level and Law Division fail to comply with governing law and practice.

Plaintiff, which had been licensed under a predecessor ordinance, applied for and received a new rent license from the Rent Review Board under the Township's 1985 Rent Control Ordinance. The landlord complied with the eight substantive and procedural requirements of the application as set forth in section 6(b) of the ordinance:

(b) Landlords of dwellings shall file certified applications for rent licenses on or before July 1 of each year with the Executive Secretary of the Rent Review Board. Said application shall contain the following information:

(i) Names and addresses of the following persons: Landlord; Managing Agent for Landlord, if any; and Superintendent in charge of the dwelling.

(ii) Number of housing space units in the dwelling.

(iii) Base rent for the month of August of the year in which the license is to be issued for each housing space and the number of parking spaces included in said base rent for each housing unit together with the fees for all of the parking spaces that are not included in the base rent.

(iv) Number and identification of all housing space units which were vacant or about to become vacant on August 1 of the year in which the license is to be issued.

(v) The effective dates of the most recent rent increases for each housing space unit and the reasons therefore if in addition to automatic increases provided by the Ordinance.

(vi) The amount, type and period of time covered for all surcharges on the base rent of each housing space unit effective as of August 1 of the year which the license is to be issued.

(vii) A certification by the landlord as to the truth of the information contained in the application.

(viii) Such further information that the Rent Review Board deems necessary.

Section 6(d) further required that

[a]s a condition to the issuance of all rent licenses, each dwelling and each landlord for each dwelling shall be required to be in full compliance with the health, safety and housing laws, codes and regulations of the Township of The Borough of Caldwell as well as those of the County of Essex and State of New Jersey and all applicable federal statutes and regulations.

No provision required a certification of compliance with section 6(d) as was required concerning the information set forth in section 6(b) for the application itself. *See* section 6(b)(vii). Section 16, the penalty section of the ordinance, provided that

[a] violation of any provision of this ordinance, including, but not limited to, the willful filing with the Board of any material misstatement of fact, shall be punishable by a fine of not more than $500.00 or imprisonment for not more than thirty (30) days or both. In addition to the above sanctions, the Board may refuse such landlord any rent increases or surcharges otherwise permissible under this ordinance. Each violation affecting a housing space unit shall be considered a separate violation.

After the license was issued, a fire occurred in one of plaintiff's units. Thereafter, it was discovered that, although there were internal smoke detectors in each apartment, the common areas were unprotected. The landlord was informed of this deficiency and immediately contracted for and installed remedial detectors.[1] The municipality's fire subcode official testified that his department never communicated with or notified plaintiff of any violation regarding the lack of a common-area smoke detection system prior to plaintiff's application for and the later issuance of the rental license.

■ Initially, it is clear that if any violation had occurred, there was only one violation, not 110. The landlord filed but one application for a single license, and the ordinance required the landlord to be in full compliance with the fire or building

---

[1] At oral argument we were informed by counsel that two municipal court complaints were filed against plaintiff for other violations. Plaintiff was fined $250 for each violation.

codes when the single license was issued. If it violated the ordinance by not being in compliance, it committed a single act.[2]

■ . There are two bases for imposing rent control in a municipality. *N.J.S.A.* 2A:42–74 *et seq.* permits a municipality to pass an ordinance establishing maximum rents and minimum standards where there are substandard dwellings to be brought up to code compliance. *N.J.S.A.* 2A:42–77(e). There is also implied power inherent in municipalities to enact rent control. *Inganamort v. Bor. of Fort Lee*, 62 *N.J.* 521 (1973); *N.J.S.A.* 40:48–2; *N.J.S.A.* 40:69A–30. It is this latter power that was exercised by the municipality when it enacted the rent leveling ordinance of 1985, amending its prior ordinance. The ordinance, by requiring compliance with State safety and housing codes, incorporated by reference *N.J.S.A.* 55:13A–7.1 which requires multiple dwellings to be equipped with smoke detectors under the rules and regulations promulgated by the Commissioner of the Department of Community Affairs. Under *N.J.S.A.* 55:13A–7.2 the local code must be within the standard established by the State Uniform Construction Code Act, *N.J.S. A.* 52:27D–119 *et seq.*

As a part of a municipality's general powers, it may pass ordinances to prevent and punish violations. The general statutory penalty section is *N.J.S.A.* 40:49–5, quoted by the trial judge, which permits imprisonment of up to 90 days or a fine not exceeding $1,000 and the enactment of a minimum penalty not exceeding $100 for an offense.[3]

---

[2]Conversely, if the landlord had raised the rent to each of the 110 apartments by an amount not authorized by the ordinance, he would have committed a separate violation with respect to each tenant. This, however, must be differentiated from the single act of not being "in full compliance" with the safety codes when a single license was issued.

[3]Here, however, the ordinance established a maximum fine of $500 or 30 days' imprisonment or both. Therefore, even if the fine had properly been levied by the Board, the Law Division modification could not have exceeded that amount.

■■ There is no statute authorizing a rent leveling board to impose monetary penalties or to order imprisonment. Such authority is within the exclusive province of the courts; and a judicial officer must impose such a penalty. *N.J. Const.* (1947), Art. VI, § 1, par. 1; Art. III, par. 1. *Cf. David v. Vesta Co.*, 45 *N.J.* 301, 326–327 (1965) (only the judicial branch of government is empowered to declare guilt or innocence in criminal cases); *Atkinson v. Parsekian*, 37 *N.J.* 143, 152 (1962) (the powers granted to the motor vehicle commissioner are administrative, not judicial);[4] *State v. Osborn*, 32 *N.J.* 117, 126–128 (1960) and *Sheeran v. Progressive Life Ins. Co.*, 182 *N.J.Super.* 237, 250 (App.Div.1981) (while there are adjudicative aspects of administrative action, the insurance commissioner cannot adjudicate penalties). Further, if the municipality intended to permit an administrative arm of its government to exercise judicial powers, such action was *ultra vires*. *Weeks v. Forman*, 16 *N.J.L.* 237, 242–243 (Sup.Ct.1837) (a municipal ordinance cannot confer jurisdiction upon an administrative officer to adjudicate a legal action). Elsewhere, it is clear that assessment of penalties is left to the courts. For example, the Penalty Enforcement Law, *N.J.S.A.* 2A:58–1 *et seq.*, and *N.J.S.A.* 52:27D–138d assess penalties for the violation of the state construction code and confer jurisdiction upon judges of the municipal courts in addition to courts of record in this State.

■ The proper course here, therefore, would have been for the Rent Control Board to have referred the matter to the public officer, construction code official in the Township, or even the Township attorney to act on behalf of the Board and institute an appropriate complaint in the municipal court. *See*

---

[4]In commenting upon the separate administrative powers of the Director of the Division of Motor Vehicles and the powers a "magistrate" (now a municipal court judge) conferred on the Director, the Supreme Court in *Atkinson, supra*, 33 *N.J.* at 152, stated: "[T]here is a grave doubt the Legislature could constitutionally create a court in the executive branch of government. *N.J.Const.* (1947), *Art.* III; see *State v. Osborn*, 32 *N.J.* 117 (1960)."

*N.J.S.A.* 2A:8–21c conferring jurisdiction to adjudicate municipal ordinance violations upon the municipal court.[5] The ordinance was not defective, but should have been read as requiring proceedings in the municipal court. This procedure, however, was not followed here, and thus the penalty assessed by the Rent Leveling Board and reviewed by the Law Division must be vacated.

■ In its reply brief, the Borough suggests that if a judicial officer must assess the penalty, the Law Division has done just that, and therefore the finding of a violation and the penalties assessed should be affirmed. We disagree. Here the Law Division review was one in lieu of prerogative writs under *R.* 4:69–1 *et seq.*, not a *de novo* appeal of a municipal court's quasi-criminal determination under *R.* 3:23–1 *et seq.* The standard of review in the two situations is entirely different. *Compare N.J. Const.* (1947), Art. VI, § V, par. 4 and the varying articulations of local agency review *Kramer v. Bd. of Adj. of Sea Girt,* 45 *N.J.* 268, 296–297 (1965) (local zoning determinations set aside only when "arbitrary, capricious or unreasonable"); *Newark v. N.J. Turnpike Authority,* 7 *N.J.* 377, 381–382 (1951) (the court will not interfere "in the absence of bad faith, fraud, corruption, manifest oppression or palpable abuse of discretion"); *In re Petition of South Lakewood Water Co.,* 115 *N.J.Super.* 352, 357 (App.Div.1971), rev'd on other grounds 61 *N.J.* 230 (1972) (judicial review permitted of municipal action also permitted in the case of arbitrary action), *with R.* 3:23–8(a) ("the trial of the appeal shall be heard de novo on the record unless . . ."). Even if a *de novo* review had been attempted by the Law Division, there had been no valid proceeding at the municipal level which could have been reviewed by the trial judge.

---

[5]The Special Civil Part of the Law Division of the Superior Court has concurrent jurisdiction. *See N.J.S.A.* 2A:6–37.

 The sole remaining point is whether plaintiff now may be prosecuted in the municipal court, even after a lapse of more than one year. This raises a question of first impression. There appears to be no statutory time limitation for the prosecution of a municipal ordinance violation. *N.J.S.A.* 40:49–5 merely sets forth the permissible penalties.

The Code of Criminal Justice, however, in *N.J.S.A.* 2C:1–6 provides a comprehensive listing of time limitations for all "offenses," defined in *N.J.S.A.* 2C:1–14k as including "a crime, a disorderly persons offense or a petty disorderly persons offense." While municipal ordinance violations are not included in the one-year limitation imposed by *N.J.S.A.* 2C:1–6b(2) upon disorderly and petty disorderly person offenses, we can reason by analogy that the same limitation applies to municipal ordinance violations.[6] Under *N.J.S.A.* 40:49–5, the maximum permitted punishment for such violations is 90 days' imprisonment or a $1,000 fine or both, which is well within the six-month maximum term for a disorderly persons offense. *N.J.S.A.* 2C:43–8, 2C:1–4c.

It would be unreasonable to assume that the Legislature intended an unlimited time to prosecute municipal ordinance violations, yet intended. to limit prosecution of statutory violations of equal or greater severity to one year. The policy of *N.J.S.A.* 2C:1–5d is to limit municipal action where the policy of the State is expressed in the Criminal Code. It is thus apparent that the one year period of limitation expressed in *N.J.S.A.* 2C:1–6b(2) also must be applicable to prosecutors for violation of municipal ordinances under *N.J.S.A.* 40:49–5.

The judgment of the Law Division is reversed and the matter remanded. We direct that all penalties be vacated and that the

---

[6]We note that process for an alleged motor vehicle violation may issue "within 30 days after the commission of the offense." *N.J.S.A.* 39:5–3. Other motor vehicle complaints have either one year or 90–day limitations. *Ibid.*

matter be further remanded to the Rent Leveling Board to dismiss any claim for monetary sanctions.