HACKENSACK WATER COMPANY, PLAINTIFF-RESPONDENT, v. SEBASTIAN RUTA, JOSEPH MANERI AND LOUIS MONTENEGRO, TOWNSHIP COMMITTEEMEN OF THE TOWNSHIP OF SOUTH HACKENSACK, DEFENDANTS-APPELLANTS.

Argued October 17, 1949—Decided November 14, 1949.

142

─────

*Mr. Ralph W. Chandless* argued the cause for appellants (*Messrs. Chandless, Weller, Kramer & Frank,* attorneys).

*Mr. John W. Griggs* argued the cause for respondent (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

The opinion of the court was delivered by

HEHER, J. The respondent Water Company solicited the consent of the appellant governing body of the Township of South Hackensack to the laying of 137 feet of 16-inch pipe in Green Street, in the Township, in general for the extension of its area of service and, in particular, for the provision of water facilities to a business house situate on Green Street in the adjacent Borough of Teterboro, about 500 feet south of the boundary line. It is planned to lay about 600 feet of 16-inch pipe in all, connected with its 6-inch line in Green Street. Shortly thereafter, on May 24, 1948, the applicant was advised by the municipal clerk, at the instance of the governing body, so he said in the notice, that a permit for the extension would not be granted "until the Borough of Teterboro enters into an agreement with the Township in relation to the joint use of public utility."

Judgment was entered in the Superior Court setting aside "the denial of the consent" as "whimsical, arbitrary and unreasonable," and directing a reconsideration of the application guided only by the standard "of the convenience to the public or the possible inconvenience to the public, or the obstruction or interference with public travel on Green Street or the damage or the restoration of the surface of Green Street." The Appellate Division of that court "modified" the judgment to provide for "due consideration" of the appli-

cation controlled by the "public interest," the grant, if made, to be conditioned only as the "public interest requires."

It is the contention of the appellant governing body that what constitutes the "public interest in relation to the laying of pipes in a public street by a private corporation" is exclusively within the legislative province, and in limiting "the scope of such consideration by the legislative branch," the judgment here contravenes Article III, section 1 of the State Constitution, dividing the powers of government among the legislative, executive and judicial branches, and barring the exercise by the one branch of the powers of either of the others. The constitutions of 1844 and 1947 have like provisions in this regard. More specifically, it is said that the judgment directs action that is essentially a "legislative function," and that the members of the governing body "are answerable only to their constituents and their own conscience as to what may be 'due consideration' and what may be 'in the public interest,'" and are not subject to control in this behalf by the judicial process. In a word, the insistence is that this is not a justiciable question. The point is without substance.

The respondent Water Company is a public utility. It was originally organized in 1869, to supply water for public and private use. In 1881, there was a consolidation of that company and six aqueduct companies under the authority of Chapter 90 of the Laws of 1876. *P. L., p.* 103, § 12. The consolidated company was vested with all the powers of its constituent companies. *Plainfield-Union Water Co. v. Plainfield,* 84 *N. J. L.* 634 (*E. & A.* 1913) ; *Bogert v. Hackensack Water Co.,* 3 *N. J. Misc.* 107 (1925) ; affirmed, 101 *N. J. L.* 518 (*E. & A.* 1925). The business is impressed with a public use; the company serves a large area in the northeastern part of the State, including the Township of South Hackensack and the Borough of Teterboro.

The Company has, by sovereign legislative grant, the power to lay mains and pipes in the public streets and highways for the performance of its functions. The legislative power in this regard has not been delegated to the municipalities

embraced within the company's field of operations. By *R. S.* 48:19–6, companies holding a legislative franchise to supply water to two or more municipalities, and all such consolidated corporations, are deemed incorporated under that chapter and authorized to supply water for public and private use in such municipalities, "and to exercise all the rights and powers conferred" by that chapter, and "to maintain, operate and extend its works, mains, pipes and appurtenances in such municipality or municipalities." Every such company is invested with the power of condemnation. *R. S.* 48:19–15. And each such company is authorized to "lay its pipes beneath such public roads, streets, and alleys as it may deem necessary for its corporate purposes, free from all charge to be made by any person or body politic whatsoever for such privilege," and also to "construct and maintain hydrants on and along such streets and alleys, provided that the consent shall be obtained of the corporate authorities of the municipality through which the pipes may be laid." *R. S.* 48:19–17. This latter section also provides that the pipes shall be laid at least three feet below the surface and shall not in anywise unnecessarily obstruct or interfere with the public travel or damage public or private property.

██ ██ Thus, the franchise to lay pipes for the discharge of the company's undertaking is derived from the State through its legislative tribunal, and not from the municipality. The latter's authority in this regard, if not purely administrative, is but a portion of the police power to serve the common interest in a limited sphere. The local agency may not nullify the legislative franchise grant; it may regulate its exercise to serve the public convenience and necessity and the interests of the abutting landowners, but it may not destroy it by inaction. It may impose such conditions as shall be found necessary for the protection of the easement of passage and the public safety and welfare, and the streets and highways against injury and damage, and the contiguous landowners against loss or undue interference with their rights and interests. Such companies do not possess unqualified power to lay their pipes when and where they choose.

The exercise of the franchise must be accommodated to all legitimate local needs and interests. Municipal action in this regard must be entirely reasonable and free from arbitrariness; the governing body must act in the allotted sphere when the water company exercises its franchise to lay pipes and mains which it may deem to be necessary for the fulfillment of its undertaking.

The State has sovereign and absolute jurisdiction and control of the roads, streets and highways within its borders. Supervision and control of public highways is exercisable directly by the Legislature, and indirectly by the municipalities and other local governmental agencies to whom the power has been delegated. The local governing body has in this behalf only such powers as have been delegated by the State's legislative body. *New Jersey Good Humor, Inc., v. Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1940); *Edwards v. Mayor and Council of Borough of Moonachie,* 3 *N. J. Super.* 17 (1949); *Postal Telegraph-Cable Co. v. Newport,* 247 *U. S.* 464, 38 *S. Ct.* 566, 62 *L. Ed.* 1215 (1917). And it is axiomatic that a delegated authority to regulate the use of streets and highways in such circumstances is not inclusive of the power to prohibit such use altogether. It is plain that the Legislature did not, by the requirement of municipal consent, design to vest in the municipality the authority to veto the legislative franchise grant to companies of this class of the power to lay pipes beneath the surface of such streets and highways as the company "may deem necessary for its corporate purposes." If a grant of such power was in contemplation, it is fair to presume that the lawmaking body would have given it directly in language admitting of no doubt of the purpose.

The distribution of water is indispensable to the functioning of civil society, nothing more so; and it is evident that the legislative scheme was to make provision for this facility so vital to health and the general welfare, especially to provide a common source for two or more municipalities, and to confer upon the municipalities the power to regulate the exercise of the franchise in consonance with the particular re-

quirements. The local power is designed to serve peculiar local conditions and needs. The municipal authority may not refuse action altogether, and thus defeat the legislative franchise. Affirmative action is required, reasonably conditioned to meet the special needs. There are obvious reasons why the exercise of a franchise to lay pipes and mains in a public street should be subject to reasonable municipal regulation; and these reasons serve to measure the quality and content of the local regulatory power.

The provision of water facilities, as contemplated by the statute, is essentially an enterprise of a public nature; and ordinarily the holder of the franchise undertakes to provide a service reasonably adequate for the needs of the community, not only at the outset, but thereafter as community growth demands an expansion of the facilities. There is every indication, from the frame of the Act and the language used to express the legislative purpose, that the expansion of the company's facilities should not be made to depend upon the arbitrary will of the local governing body. The normal development of such companies as instruments of public service may not be arrested by caprice. The unit of service in the legislative concept is not the municipality, but the area of need; and the need is not for the judgment of the municipality.

We gather the sense of a law from its object and the nature of the subject matter and the whole of the context and the acts *in pari materia*. The parts of a statute are to be viewed in relation to the whole, and the motive which led to the making of the law, and reconciled, if possible, to carry out the reasonably probable legislative policy. The general intention of the act controls the interpretation of its parts. *May v. Nutley*, 111 *N. J. L.* 166 (*Sup. Ct.* 1933); *Pine v. Okzewski*, 112 *N. J. L.* 429 (*E. & A.* 1934).

The principle was applied by Vice-Chancellor Van Fleet in the interpretation of a similar statute in *Atlantic City Water-Works Co. v. Consumers Water Co.*, 44 *N. J. Eq.* 427 (*Ch.* 1888).

And if, as appellant maintains, the statutory municipal action can be had only by ordinance, the governing body may be commanded to act by a judgment in the nature of a *mandamus* under Article VI, section V, paragraph 4 of the Constitution of 1947 and *Rule* 3 :81–1 *et seq.* *Vide Hudson and Middlesex Telephone and Telegraph Company v. Linden,* 80 *N. J. L.* 158 (*Sup. Ct.* 1910). The judgment in such cases does not enjoin a particular result; it simply directs action controlled by the statutory considerations as herein outlined, and thus precludes an arbitrary exercise of power, such as we find here. *Librizzi v. Plunkett,* 126 *N. J. L.* 17 (*Sup. Ct.* 1940).

The judgment is modified in keeping with the foregoing considerations, and, as so modified, affirmed.

*For affirmance and modification*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.