ROBERT JUZEK AND ANNA JUZEK, HIS WIFE, RESPON-
DENTS-APPELLANTS, v. HACKENSACK WATER COM-
PANY, PETITIONER-RESPONDENT, AND BOARD OF
PUBLIC UTILITY COMMISSIONERS OF THE STATE OF
NEW JERSEY, DEPARTMENT OF PUBLIC UTILITIES,
RESPONDENT.

Argued September 12 and 13, 1966—Decided December 5, 1966.

*Mrs. Sylvia B. Pressler* argued the cause for respondents-appellants (*Mr. David A. Gelber,* attorney).

*Mr. Samuel W. Zerman* argued the cause for petitioner-respondent, Hackensack Water Company.

*Mr. William Gural,* Deputy Attorney General, argued the cause for the Respondent, Board of Public Utility Commissioners of the State of New Jersey, Department of Public Utilities (*Mr. Arthur J. Sills,* Attorney General of New Jersey, Attorney; *Mr. Richard F. Green,* Deputy Attorney General on the brief).

*Mr. Robert L. Solan,* Deputy Attorney General, argued the cause for the Water Policy and Supply Council in the Department of Conservation and Economic Development (*Mr.*

*Arthur J. Sills,* Attorney General of New Jersey, Attorney), appearing herein at the request of the Court.

The opinion of the court was delivered by

HANEMAN, J. This appeal involves the effort of Hackensack Water Company (Hackensack) to condemn 26 acres of land owned by Robert and Anna Juzek (Juzeks).

Hackensack is a public utility corporation which provides water in Bergen and Hudson Counties. The main source of its supply is the Hackensack River which flows southward into New Jersey from New York. The water requirements of this territory have increased in recent years due to the industrial and population growth of the area. In order to fully develop the potential of the river to adequately serve the area, Hackensack proposes to construct a reservoir, parts of which will lie in the Township of River Vale and the Borough of Old Tappan respectively. The proposed reservoir will have a water surface of 1,225 acres and a capacity of 4 billion gallons. A portion of the land required for this purpose is owned by the Juzeks. The Juzeks' total property of slightly over 32 acres, is rectangular in shape being approximately 500' wide and 2,700' long. The easterly six acres lie in the bed of the reservoir, east of the proposed impounding dam. The Juzeks have no objection to the taking of these six acres. However, Hackensack also seeks to take an additional 20 acres down stream, west of the dam. Said land is allegedly needed to prevent pollution and contamination of the overflow water from the reservoir.

Pursuant to *N. J. S.* 48:3–17.6 and 48:3–17.7, Hackensack filed a petition with the Board of Public Utility Commissioners (Utility Commission) on January 5, 1965, requesting permission to condemn the aforementioned land. The Juzeks filed an answer contesting the condemnation of the westerly 20 acres. Hearings were held on February 17, March 18 and April 20, 1965. During the course of the hearings the Juzeks moved to dismiss the petition on the ground that the plans for the dam and reservoir had not been approved by the Water

Policy and Supply Council of the Department of Conservation and Economic Development (Water Council). On February 18, 1965, subsequent to the Juzeks' motion, Hackensack applied to the Water Council pursuant to *R. S.* 58:1–17, *et seq.*, for "approval of plans for construction of a regulating reservoir." The application as filed did not seek the right to exercise the power to condemn any lands.

As required by the Water Council, notice of a hearing on said application was published in a local newspaper and copies mailed to Park Ridge Water Department, Ho-Ho-Kus Water Department, Waldwick Water Department, Ridgewood Water Department, Edward Salsberg, Clerk, Township of River Vale, and Frank B. Recktenwald, Clerk, Borough of Old Tappan. The notice advised that Hackensack had filed an application "for approval of plans for construction of a new reservoir" and that a hearing would be held on a specified date at which persons could be heard "for or against the approval of the application."

Although Juzeks had actual knowledge of the proceedings seeking approval of plans by the Water Council, they did not participate therein. The Water Council conducted hearings on April 19, May 10 and May 20, 1965. On the latter date and for the first time, counsel for Hackensack made a request for permission to condemn. The Water Council rendered its decision giving approval to the construction of the dam and authorizing the condemnation of the Juzek lands. On July 20, 1965 the Utility Commission issued the order initially sought, granting Hackensack permission to exercise the power of condemnation. The Juzeks appealed to the Appellate Division from the Utility Commission order but did not appeal from the Water Council order. On Hackensack's motion, the appeal was dismissed, the Appellate Division stating:

"Granted in view of the fact that Hackensack Water applied for and obtained approval of the Water Policy and Supply Council of the Department of Conservation and Economic Development for the construction of the dam and reservoir in question, and for the condemnation of the necessary lands therefor. The present appeal is therefore academic."

Juzeks' petition for certification to this Court was granted. (*R. R.* 1:10–2)

The focal question is whether the granting of permission to a public utility water company for condemnation is within the exclusive jurisdiction of the Water Council or whether the Water Council and Utility Commission have concurrent jurisdiction.

Insofar as the Water Council is concerned the applicable statutes provide as follows:

*R. S.* 58:1–10 reads:

"The commission shall have general supervision over all sources of potable and public water supplies, including surface, sub-surface and percolating waters, to the end that the same may be economically and prudently developed for public use."

*R. S.* 58:1–17 reads in part:

"* * * no person or corporation supplying or proposing to supply the inhabitants of any municipal corporation or other civil division of the state with water, *shall have power to condemn* lands, water or water rights for any new or additional source of water supply, whether such source be surface, subsurface, well or percolating water, or to divert water from such new or additional source (other than for new or additional sources of water supply, the maps or plans for which, in conformity with permits for the taking thereof, were heretofore approved by the state water policy commission or the board or body theretofore authorized by law, to grant such approval), until such * * * person or corporation has first submitted a petition to the commission, as hereinafter provided, and until the commission shall have approved the same as submitted or with such modifications and subject to such conditions as it may determine should be incorporated in such approval after a hearing as hereinafter provided." (Emphasis supplied)

*R. S.* 58:1–18 reads in part:

"* * * any person or corporation, may make application by petition in writing to the commission for the approval of its maps, plans and profiles of such new or additional water supply or for such new or additional source or sources of water supply.

The application shall show the sources of the proposed supply and shall be accompanied by an exhibit of maps of the lands to be ac-

quired and showing the sites and areas of the proposed reservoirs, a plan of the other works proposed to be constructed, the profiles of the aqueduct lines and the flow lines of the water when impounded, maps, plans and surveys and abstract of official reports relating to the same, showing the need for a particular source or sources of supply and the reasons therefor, the *plan proposed for protecting the new supply and watershed from contamination* or the proposed plan for filtering such new supply. The application shall also be accompanied by such proof as to the character and purity of the water supply proposed to be acquired as the commission shall require." (Emphasis supplied)

### *R. S.* 58:1–20 reads:

"The commission shall, upon the day specified in the notice, or upon such subsequent day or days to which it may adjourn the hearing, proceed to examine the maps and profiles and to hear the proofs and arguments submitted in support of and in opposition to the proposed project. The commission shall determine whether the plans proposed are justified by public necessity, whether they provide for the proper and safe construction of all works connected therewith, *whether they provide for the proper protection of the supply and the watershed from contamination* or provide for the proper filtration of such additional supply, whether the reduction of the dry-season flow of any stream will be caused to an amount likely to produce insanitary conditions or otherwise unduly injure public or private interest, and whether the plans are just and equitable to the other municipalities and civil divisions of the state affected thereby and to the inhabitants thereof, particular consideration being given to their present and future necessities for sources of water supply." (Emphasis supplied)

### *R. S.* 58:6–1 reads in part:

"Every * * * corporation now or hereafter organized under any law of this state and engaged in the business of supplying water for public use in one or more municipalities of this state * * * *which* * * * *shall obtain from the state water policy commission* or other state agency succeeding to and exercising the jurisdiction and powers of such commission, the *approval of plans for and assent of the state to the diversion of water for any new or additional water supply or from any new or additional source or sources* of water supply in this state, *may acquire by* * * * *condemnation* all such lands, water and water rights as may be required to enable such municipal or other corporation, or such person or persons, to divert and use water for such new or additional water supply or from such new or additional source or sources of supply in accordance with the plans so approved and the assent of the state so obtained." (Emphasis supplied)

*R. S.* 58:6–2 reads in part:

"Every * * * corporation organized under any law of this state and engaged in the business of supplying water for public use in one or more municipalities of this state, * * * which * * * *has obtained from the state water supply commission*, the board of conservation and development or the state water policy commission, the approval of plans for and the assent of the state to *the diversion of water* for any new or additional water supply or from any new or additional source or sources of water supply in this state, *may acquire by * * * condemnation, such lands*, water and water rights *as may be required* to enable such * * * corporation or such persons, to divert and use water for such new or additional water supply or from such new or additional source or sources of supply *in accordance with the plans so approved and the assent of the state so obtained."* (Emphasis supplied)

*R. S.* 58:6–3 reads:

"*Before the right of condemnation* conferred by this chapter *is exercised, the approval of the state water policy commission* or other state agency succeeding to and exercising the jurisdiction and powers of such commission, *shall be first secured thereto."* (Emphasis supplied)

The Water Council was established for the conservation and control of waters of the State, *Passaic v. Clifton,* 14 *N. J.* 136 (1953) of which the "purity of the state's water supply is of necessity a pre-eminent factor," *Jersey City v. State Water Policy Comm'n.,* 118 *N. J. L.* 72 (*E. & A.* 1937). It is, therefore, apparent that the Water Council has the power and duty to protect the source of State water supply from contamination and to that end may require that a water company make adequate provision for the protection of a proposed reservoir from perimeter pollution. Thus in its approval of plans for the diversion of water "for any new or additional water supply or for any new or additional source or sources of water supply," the Water Council may require that adequate land, in addition to that to be inundated, be acquired for pollution prevention purposes. In the discharge of this legislative mandate, the Water Council and its agents have developed a

singular expertise and are unusually qualified to pass judgment on such subject. It is entirely rational therefore, that the Water Council should be the governmental agency charged with the duty of determining the extent of the acquisition of land necessary for that purpose. For the attainment of the stated objectives, the Legislature has granted the Water Council the power to authorize condemnation of land by a water utility.

Insofar as the Utility Commission is concerned, the applicable statutes read as follows:

*N. J. S.* 48:3–17.6 provides in part:

"Any of the following types of public utilities now or hereafter organized and existing under and by virtue of any law of this State: * * * water, in addition to and not in substitution of whatever other right, power and authority it may have and possess, may, *subject to the restrictions as provided hereinafter,* take or acquire under the provisions of chapter 1 of Title 20, Eminent Domain, such property or other interest therein which *may be reasonably necessary for the purposes enumerated for each such utility* in the succeeding section hereto." (Emphasis added)

*N. J. S.* 48:3–17.7 provides in part:

"The power of condemnation shall not be used or enforced by any such public utility unless the necessary land or other property or any interest therein as stated in this chapter, cannot be acquired from the owner by reason of disagreement as to the price or legal incapacity or absence of the owner, or inability to convey a valid title, or because the names or addresses of the owner or owners may be unknown, or for any other reason. *Except where a governmental agency having jurisdiction has granted the utility* the *permission to take* or acquire property or any interests for the utility's purposes the power of condemnation shall not be used or enforced by any public utility *until and unless such utility shall have applied to the Board of Public Utility Commissioners* * * *." (Emphasis added)

■■ Admittedly, some confusion is engendered by what appears to be conflicting phraseology in *N. J. S.* 48:3–17.6 and .7 above emphasized and also between the provisions of *N. J. S.* 48:3–17.6 and *R. S.* 58:6–1, *et seq.* However, the doubt is resolved by viewing these statutes, which are *in pari*

*materia,* in the light of the general statutory scheme. The power of water utilities to condemn is provided for by two statutes, *i. e., N. J. S.* 48 :3–17.6 and *R. S.* 58 :6–1. But in both statutes the right to exercise the power to condemn is subject to express approval of a governmental agency. There is nothing in *N. J. S.* 48 :3–17.6 or *R. S.* 58 :6–1 which expressly provides for concurrent jurisdiction in the Water Council and the Utility Commission. To the contrary, the general power of the Utility Commission to authorize a particular utility to exercise the power to condemn is limited by the second sentence of *N. J. S.* 48 :3–17.7. There, a utility is prohibited from exercising its power of condemnation except where the proper governmental agency having jurisdiction has granted permission. Where there is no such agency, permission to exercise the power must be sought from the Utility Commission. In the case of the existence of another approving governmental body, such as the Water Council, the Utility Commission is without jurisdiction to grant such permission. This conclusion is consistent with *N. J. S.* 48 :19–15.1 which provides that a water utility may exercise the power as provided in the afore-mentioned sections and also provides that:

> "Nothing in this section shall be construed to limit or affect the power or jurisdiction of the Department of Conservation and Economic Development."

The Water Council has, as above noted, the authority to permit the exercise of the power of eminent domain. The intent to limit the jurisdiction of the Utility Commission so as not to "limit or affect the power or jurisdiction" of the Water Council is here demonstrated. Thus, not only does *N. J. S.* 48 :3–17.7 fail to provide for, but *N. J. S.* 48 :19–15.1 expressly prohibits, such concurrent jurisdiction.

It is logical that the jurisdiction to approve the exercise of the power of condemnation should reside exclusively in the Water Council, charged as it is with the duty to provide potable water for the State and clothed with the expertise

with which it can treat of that subject. The Utility Commission, on the other hand, has no such duty or expertise. It should also be noted that the vesting of jurisdiction in one governmental agency exclusively, avoids the confusion which, as demonstrated in the matter *sub judice,* could result from a vesting of concurrent authority. We conclude, therefore, that Water Council has the exclusive authority to grant permission to a water utility to exercise the power of condemnation.

■ Hackensack argues that what it here seeks is not a "new or additional water supply or * * * new or additional source or sources of water supply." (*R. S.* 58:6–1, 2) But the application filed with the Water Council shows that the reservoir will result in "additional flow regulation through additional impoundment" which will be used to "augment the existing supply." The construction of a dam and the impounding of water for that purpose, even though the source of that water be a river from which Hackensack is already diverting water, constitutes an "additional water supply." *Grobart v. Passaic Valley Water Commission,* 135 *N. J. L.* 190 (*E. & A.* 1947).

The Utility Commission argues that failure to take timely appeal from the Water Council order approving the exercise of the power to condemn bars the Juzeks from contesting that order now. Provision for approval of maps, plans and profiles is made by *R. S.* 58:1–18 through *R. S.* 58:1–20. The power of condemnation and provision for approval of such by the Water Council are the concern of *R. S.* 58:6–1, *et seq.* Although the approval of plans and the exercise of the power to condemn are two separate matters they may be and are quite often combined into one proceeding. The notice *sub judice,* published and mailed as above set forth, stated that Hackensack sought only "approval of plans for construction of a new reservoir." There was no mention in the application that Hackensack sought approval of the exercise of the power of condemnation with relation to the Juzeks' property.

Although *R. S.* 58:6–1, *et seq.,* delegates to the Water Council the jurisdiction to approve the exercise of the power

of condemnation, the statute does not expressly provide for an application seeking approval of condemnation, or for a hearing thereon, or notice of such hearing.

Where an administrative agency's function partakes of the judicial, its exercise is termed *quasi*-judicial and the exercise of such judicial power is conditioned upon the observance of the traditional safeguards against arbitrary action and the fundamental requisites of due process of law. *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950). The Water Council was here performing such a function. *In re Plainfield-Union Water Co.,* 11 *N. J.* 382 (1953); *Chatham v. Board Conservation & Development,* 107 *N. J. L.* 101 (*E. & A.* 1930). Where, as here, substantial rights may be affected by the exercise of such power, procedural due process requires that notice and timely and reasonable opportunity to be heard and to defend be given the parties whose rights may so be affected. See *In re Borough of Peapack-Gladstone,* 11 *N. J. Super.* 498 (*App. Div.* 1951); *Test v. Test,* 131 *N. J. Eq.* 197 (*E. & A.* 1942); *Hinners v. Banville,* 114 *N. J. Eq.* 348 (*E. & A.* 1933); *The State v. Newark,* 25 *N. J. L.* 399 (*Sup. Ct.* 1856); *Township of Kearney v. Ballantine,* 54 *N. J. L.* 194 (*E. & A.* 1891).

The grant of an express power is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective. *Cammarata v. Essex County Park Comm'n.,* 26 *N. J.* 404 (1958); 3 *Sutherland, Statutory Construction* § 5402 (*3d ed.* 1943). That which is clearly implied, is as much a part of the law as that which is expressed. *Giles v. Gassert,* 23 *N. J.* 22 (1956), *State v. DeMeo,* 20 *N. J.* 1, 56 *A. L. R. 2d* 905 (1955); *State v. Lanza,* 27 *N. J.* 516 (1958), appeal dismissed 358 *U. S.* 333, 79 *S. Ct.* 351, 3 *L. Ed. 2d* 350 (1959), rehearing denied 359 *U. S.* 932, 79 *S. Ct.* 606, 3 *L. Ed. 2d* 634 (1959); *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Jersey City v. State Water Policy Comm'n.,* 118 *N. J. L.* 72 (*E. & A.* 1936); 82 *C. J. S. Statutes* § 327 (1953).

A statute often speaks as plainly by inference as by express words. *Pine v. Okzewski,* 112 *N. J. L.* 429 (*E. & A.* 1933); *In re Loch Arbour,* 25 *N. J.* 258 (1957); 50 *Am. Jur. Statutes* § 242 (1944). Where a statute which commands the exercise of a *quasi*-judicial function by an administrative agency, contains no specific provision for notice and hearing, such requirements may be implied. *Paulsen v. City of Portland,* 149 *U. S.* 30, 13 *S. Ct.* 750, 37 *L. Ed.* 637 (1892); *Jersey City v. Division of Tax Appeals,* 5 *N. J. Super.* 375 (*App. Div.* 1949), affirmed 5 *N. J.* 433 (1950); *Vanderhoven v. Rahway,* 120 *N. J. L.* 610 (*Sup. Ct.* 1938); *School Dist. No. 3 v. Perry,* 126 *Col.* 443, 250 *P. 2d* 1010 (*Sup. Ct.* 1952); *McManus v. Industrial Commission, et al,* 53 *Ariz.* 22, 85 *P. 2d* 54 (*Sup. Ct.* 1938); *Gilchrist v. Bierring,* 234 *Iowa* 899, 14 *N. W. 2d* 724 (*Sup. Ct.* 1944); *Bd. of Education of Choctaw County v. Kennedy,* 256 *Ala.* 478, 55 *So. 2d* 511 (*Sup. Ct.* 1951); 42 *Am. Jur. Public Administrative Law* § 135 (1942). Thus it is obvious that *R. S.* 58:6–3 which provides for Water Council approval of the exercise of the right of condemnation also contemplates all necessary requirements to satisfy due process.

Hackensack, having not included in its formal written application a request to Water Council for permission to condemn the Juzek lands and having failed to give notice to the Juzeks of a hearing on the issue of condemnation approval, the requirements of due process were lacking and the order of Water Council insofar as it grants that right is void.

The Legislature intended that Water Council should pass upon the need for any new or additional source of water; upon the location of the sites and areas of proposed reservoirs, including peripheral areas; as well as the exercise of the power of condemnation. As above noted, the statutory scheme is sufficiently flexible, to permit the combining of a request for approval of need and plans with a request for permission to exercise the power of condemnation. However, it is evident that a utility would not know with certainty, in advance of the approval of its application for a declaration

of need and of the proposed site and area, how much land it would be required to acquire and whether it would have to resort to condemnation for that purpose. Hence it might fail to initially join in and give notice of its application to some interested party. If the decision of Water Council on the above problems is subsequently questioned in any other forum and it appears that any interested party was not, as here, either joined or given notice of the Water Council proceeding, for the foregoing or any other reason, the matter should be referred back to that Council to accord such party an opportunity to be heard.

The judgments of the Appellate Division and the Utility Commission are therefore reversed. Hackensack may make application to Water Council for the right to exercise the power to condemn the disputed portion of the Juzeks' property. Due notice of the filing of and hearing on such application shall be given to interested parties. At the hearing if the parties and the agency are agreeable, they may use the testimony already adduced before the Utility Commission and Water Council reserving the right to any party to further cross-examine or adduce additional testimony.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.