196 N.J. Super. 162 (1984)
481 A.2d 1160
IN THE MATTER OF THE PETITION OF HACKENSACK WATER COMPANY FOR THE GRANT OF MUNICIPAL CONSENT THROUGH THE VILLAGE OF RIDGEWOOD PURSUANT TO N.J.S.A. 48:19-17.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1984.
Decided April 9, 1984.
*163 Before Judges BISCHOFF, PETRELLA and BRODY.
*164 Roger W. Breslin, Jr. argued the cause for appellant, Village of Ridgewood (Goodman, Stoldt, Breslin & Horan, attorneys).
Cindy K. Miller, Deputy Attorney General, argued the cause for respondent, Board of Public Utilities (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel).
Thomas J. Herten argued the cause for respondent, Hackensack Water Company (Breslin, Herten & LePore, attorneys; Thomas J. Herten and Andrew J. Cevasco on the brief).
PER CURIAM.
The dispute here involves the question of the jurisdiction of the Board of Public Utilities (BPU) and its authority with respect to the laying of a water transmission pipeline by Hackensack Water Company (Water Company) through the Village of Ridgewood (Ridgewood), where it is not franchised, in connection with the completion of a water diversion project known as "Wanaque South."[1] We affirm the BPU's finding that it had jurisdiction to override Ridgewood's denial of consent to lay pipes. We hold that the BPU's refusal to reopen the question of the necessity of the project was not a denial of due process to Ridgewood.
This project is encompassed in an agreement between the North Jersey District Water Supply Commission (North Jersey) and Water Company which arose from proceedings before the New Jersey State Water Policy and Supply Council (Council) from November 1973 into 1978.[2]
*165 In 1973 North Jersey, a governmental entity, applied for approval to increase its diversion rights from the Ramapo River, increase its withdrawal limits from the Wanaque Reservoir and construct a reservoir on the Wanaque River. Id. at 178. Water Company, the Passaic Valley Water Commission, the City of Paterson and others objected to the project on various grounds. A compromise was worked out between North Jersey and Water Company which resulted in the filing of individual amended applications constituting a joint proposal. Hearings before the Council began on September 8, 1975. By letter dated February 20, 1976 Water Company sent Ridgewood a letter indicating that it was "probable that the main [for the project] would be routed through a portion of the Village of Ridgewood." Although the mayor of Ridgewood acknowledged receipt of the letter, Ridgewood did not participate in the balance of the hearing on the Wanaque project before the Council. The hearings continued for a total of 52 days and terminated April 10, 1978.
After approval by both the Council and the Department of Environmental Protection, and after the agreement with North Jersey, the Water Company applied for Ridgewood's consent to lay water transmission pipeline under the public streets of the municipality as part of its portion of the project. Ridgewood denied such consent on March 9, 1982.
Subsequent to Ridgewood's denial of consent to permit the Water Company to lay its transmission pipeline beneath Ridgewood's roads and streets, the Water Company filed a petition of appeal with the BPU on June 15, 1982 pursuant to N.J.S.A. 48:19-17. The matter was heard by a single commissioner of the BPU, see N.J.S.A. 52:14F-8(b), who ruled that there would be no testimony or argument taken regarding the need for the project because that had previously been established on both the administrative and judicial levels. The BPU denied a stay. Ridgewood withdrew from the proceedings and sought relief in the Appellate Division while the hearing proceeded. Its motions *166 for leave to appeal the ruling and for a stay were denied by this court and the Supreme Court.
Hearings before the BPU continued for 10 days after which a commissioner conducted a personal inspection of the proposed pipeline route as well as the various alternative routes. By order dated May 19, 1983, the BPU determined that it had jurisdiction under N.J.S.A. 48:19-17. The BPU concluded that the Water Company had established that the proposed pipeline route through Ridgewood was reasonably necessary for the service of the public and granted the Water Company relief on its appeal. Based on the evidence presented the BPU further concluded that the route through Ridgewood was the most reasonable selection among the alternative routes presented. The order incorporated six specific guidelines to be followed by the Water Company in installation of the transmission pipeline for the protection of Ridgewood.
Ridgewood appealed and applied for a stay. That application was denied. Construction commenced during the pendency of this appeal. We were advised at oral argument that this work is substantially completed. A limited remand to the BPU had been granted pending this appeal with respect to disclosed rock conditions which required blasting in Ridgewood in order to excavate expeditiously for the water transmission pipeline. Subsequent applications for stays of the blasting were ultimately denied.

I
On this appeal Ridgewood argues that the BPU did not have jurisdiction or authority to consent to the laying of the pipeline through Ridgewood and that its refusal to permit testimony proffered by Ridgewood on the necessity of the Wanaque project constituted a denial of due process of law. The issue of the reasonableness of the route has not been addressed in the briefs and has not been appealed.
*167 Ridgewood asserts that N.J.S.A. 48:19-17 does not confer jurisdiction on the BPU to decide whether a nonfranchised water company may lay pipes in a municipality that has denied its consent to that utility. It argues that N.J.S.A. 48:19-17[3] only applies where a franchise has been granted. That statute provides:
Each water company may lay its pipes beneath such public roads, streets, and places as it may deem necessary for its corporate purposes, free from all charge to be made by any person or body politic whatsoever for such privilege, and may also construct and maintain hydrants on and along such roads, streets and places, provided that the pipes shall be laid at least 3 feet below the surface and shall not in anywise unnecessarily obstruct or interfere with the public travel or damage public or private property.
The consent of the public body charged with the repair and maintenance of such public roads, streets and places shall first be obtained.
If such public body shall refuse or fail to give its consent, the water company may appeal to the Board of Public Utility Commissioners of the State of New Jersey. A hearing thereon shall be had on notice to all parties in interest, who shall be afforded an opportunity to be heard. If, after such hearing the Board of Public Utility Commissioners shall determine that the installation of such *168 pipes or hydrants is reasonably necessary for the service, convenience or welfare of the public, the water company shall be authorized to proceed in accordance with such determination.
Ridgewood argues that In re Petition of South Lakewood Water Co., 61 N.J. 230 (1972), supports its argument that this statute was only intended to apply where a franchise had been issued. Respondents take the contrary position, arguing that the 1962 and 1966 amendments changed the original statutory intent and applied to all utilities. South Lakewood Water Co. was decided in 1972, and the court considered the statute as it stood after those amendments and as it presently reads.
Ridgewood argues that N.J.S.A. 48:19-19 is the applicable statute. It reads:
Every water company organized under the laws of this State may contract with any company organized under any law of the State for a supply of water upon such terms and for such terms as may be mutually agreed upon. Such companies may lay such supply mains and pipes as may be thought necessary to furnish such supply through any property upon obtaining the consent in writing of the owner thereof, or under the surface of any streets, roads, highways or public places, provided that the companies first obtain the consent by ordinance of the municipalities through which the mains and pipes are to be laid.
The municipal body having control of such streets, roads, highways or public places shall designate the place therein where and the manner in which the pipes or mains shall be laid.
This statute applies where one water company contracts with another water company. While it is true that Hackensack Water Company is responsible for the part of the Wanaque South joint project which passes through Ridgewood, the project involves a contract for a supply of water in which two companies are involved. Section 19 requires the consent of the municipality by ordinance prior to the installation of mains and pipes. Under section 19 the municipal governing body has the right to designate the place in the street and the manner in which the pipes or mains shall be laid.
Our Supreme Court said in In re Public Serv. Elec. & Gas Co., 35 N.J. 358, 371 (1961):
Title 48 ... [reflects] a legislative recognition that public interest in proper regulation of public utilities transcends municipal or county lines, and that a *169 centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the State.
The recognition of the necessity of centralized control of utilities was repeated by this court in County of Bergen v. Dept. of Public Utilities of N.J., 117 N.J. Super. 304, 312 (App.Div. 1971). Furthermore, as creatures of the State, municipalities are subject to State control. See In re Public Service Elec. & Gas Co., supra, 35 N.J. at 372; Hackensack Water Co. v. Ruta, 3 N.J. 139, 146 (1949); Clark v. Degnan, 163 N.J. Super. 344, 366 (Law Div. 1978), aff'd as mod., 83 N.J. 393 (1980); Smith v. Goldman, 159 N.J. Super. 297 (App.Div. 1978), aff'd sub nom City of Camden v. Byrne, 82 N.J. 133 (1980).
Under our Constitution laws concerning municipal governments are required to be liberally construed in favor of municipal authority, and such laws include not only those powers granted expressly, but by fair implication. N.J.Const. (1947), Art. IV, § 7, par. 11. The legislative intent to supersede local powers must be clearly present, see United Bldg. & Constr. Trades Council of Camden County & Vicinity v. Mayor & Coun. of City of Camden, 88 N.J. 317, 343-344 (1982), rev'd on other grounds, ___ U.S. ___, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). The court there said that preemption will be found where the statute either expressly or impliedly is intended to be exclusive in the field and the matter is not an appropriate subject for local regulation because by its nature it inherently requires uniform and consistent treatment at the State level. A legislative intent to supersede local powers must be clearly present. Garden State Farms, Inc. v. Bay, 77 N.J. 439, 450 (1978). However, there is a presumption that State legislation creating a State agency preempts municipal control. See Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of Twp. of West New York, 71 N.J. 451, 464 (1976); Twn. of Kearny v. Jersey City Incinerator Auth., 140 N.J. Super. 279 (Chan.Div. 1976); cf. Brunetti v. Borough of New Milford, 68 N.J. 576 (1975).
*170 Moreover, the power of the State over the right of a municipality to act in its governmental capacity is unrestrained by the contract clause of the Federal Constitution. Clark v. Byrne, 165 N.J. Super. 98, 107 (Law Div. 1978), aff'd 165 N.J. Super. 16 (App.Div. 1978). Hence, it is clear that governmental subdivisions of the State may readily be bridged when necessary to vindicate State Constitutional rights and policies. Jenkins v. Tp. of Morris School Dist. & Bd. of Ed., 58 N.J. 483 (1971); State v. East Shores, Inc., 164 N.J. Super. 530 (App.Div. 1979).
The respondents argue that the most likely legislative intent in the 1966 amendments of N.J.S.A. 48:19-17 in providing for an appeal to the BPU was to provide for statewide control over the provision of water supplies within the State.
The cases upon which Ridgewood relies to counter this argument, except South Lakewood Water Co., were decided before the 1962 and 1966 amendments to N.J.S.A. 48:19-17. See, e.g., Hackensack Water Co. v. Ruta, supra, 3 N.J. at 139, and Aldrich Water v. Sprinkle, 70 N.J. Super. 134 (Law Div. 1961). Although the South Lakewood Water Co. case was decided in 1972, it dealt with the issue of whether the BPU could extend a franchise into a neighboring community without its consent and without the consent of its statutorily created municipal utilities authority. Municipal consent is required for a company to expand its franchised area. N.J.S.A. 48:19-20 and In re South Lakewood Water Co., supra.
If Ridgewood were correct in its argument here with respect to the extension of the water pipelines for a State authorized project, a municipality would thus be vested with the power to frustrate that particular project. Although we recognize the anomalous situation that Ridgewood will be burdened with a water pipeline owned by Water Company in the public areas of the municipality, thereby arguably giving the Water Company some sort of property right in the streets, it surely *171 could not have been the legislative intent to allow Ridgewood to frustrate the State project.
Although the language of N.J.S.A. 48:19-17 regarding the exemption from charges for laying pipes and constructing and maintaining hydrants could be considered to apply only to municipalities in which franchises have been granted, we are not persuaded that therefore the overall intent of the statute is limited solely to such situations. Indeed, we think the thrust of the statute is to confer jurisdiction on the BPU where the State has authorized a project in the public interest. Furthermore, even under N.J.S.A. 48:19-19 we would be constrained to find that if consent of a municipality was not given in such circumstances as exist here, it could be successfully challenged on appeal to the BPU on the basis that such consent was unreasonably withheld. Hackensack Water Co. v. Ruta, supra, 3 N.J. at 144-146. In such circumstances because of the primary jurisdiction of the BPU over water companies, it would have jurisdiction to hear appeals from the denial of consent. See Boss v. Rockland Elec. Co., 95 N.J. 33 (1983).

II
We next consider whether Ridgewood was denied due process because the BPU would not permit testimony concerning the necessity of the Wanaque South project. The Water Company essentially argues that Ridgewood had notice in 1976 of the potential for the pipeline going through its streets and decided not to participate in that hearing, and moreover, that the necessity of the project has been established by prior administrative and judicial proceedings. Indeed, in In re North Jersey Dist. Water Supply Comm'n, supra, 175 N.J. Super. at 197, this court noted that the Water Policy and Supply Council had specifically found that the project was "justified by public necessity."
Ridgewood argues that its lack of participation in the original hearings on the necessity of the Wanaque South project together *172 with the BPU's refusal to entertain testimony on that issue in the hearings on the denial of municipal consent constitute a denial of due process. Ridgewood argues that it has "particularized property rights or other special interest which [were] affected by the administrative determination," relying on Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div. 1977), certif. den. 75 N.J. 538 (1977). It thus asserts a constitutional right to an adversary hearing or a contested administrative hearing, relying on N.J.S.A. 58:1-20.
Although the cited statute was in effect when the hearings began before the Water Policy and Supply Council in 1975, the statute was superseded by N.J.S.A. 58:1A-12 in 1981. That section reads:
No person supplying or proposing to supply water to any other person shall have the power to condemn lands, water or water privileges for any new or additional source of ground or surface water until that person has first submitted to the department an application for approval to divert the source of the water and the department has approved the application subject to such conditions as it may determine to be necessary to protect the public health and welfare.
Ridgewood argues that the notice that it received by the February 1976 letter from the Water Company constituted inadequate notice. It argues that Jusek v. Hackensack Water Co., 48 N.J. 302 (1966) supports its position. However, In Jusek, the Water Company planned condemnation of the plaintiff's property under N.J.S.A. 48:3-17.6 and N.J.S.A. 58:6-1, but failed to include any notice of the condemnation in its published notice. That case is factually distinguishable from the situation presented here.
The respondents argue that because the need for the Wanaque South project has been conclusively determined by the Water Policy and Supply Council, the Commissioner of the Department of Environmental Protection and the court, Ridgewood cannot relitigate the need for the project, and it is not an affected municipality within the meaning of N.J.S.A. 58:1-20 *173 because there is no impact upon the need and services rendered to Ridgewood.[4]
We are satisfied that Ridgewood had received notice in February 1976, had an opportunity to be heard and declined to participate in the hearings. It cannot now claim that it did not receive notice as an "affected municipality" within the meaning of R.S. 58:1-20. See Public Interest Research Group v. State, supra. Cf. Cunningham v. Dept. of Civil Service, 69 N.J. 13, 22 (1975). Although it might have been desirable for Ridgewood, as well as all other potentially affected municipalities, particularly those municipalities in which Water Company did not have a franchise, to have been advised prior to the start of the hearings on the proposed joint project of the potential impact on the municipality, we are satisfied that even the *174 somewhat belated notice sent in February 1976 by the Water Company to Ridgewood would have afforded Ridgewood the opportunity to have participated and have its views presented if it had desired to do so.
Affirmed.
NOTES
[1] This project was originally called the Two Bridges-Ramapo Diversion Project.
[2] The background of what was originally a dispute between North Jersey and the Water Company are detailed in In re North Jersey Dist. Water Supply Comm'n, 175 N.J. Super. 167 (App.Div. 1980), certif. den. 85 N.J. 460 (1980). We do not repeat those facts except in brief outline to put the issues in this appeal in perspective.
[3] The introductory statement to Assembly Bill No. 496 (which was enacted as L. 1966, c. 233 and amended N.J.S.A. 48:19-17), reads:

The purpose of the provisions of this section requiring municipal consent is to protect the public against unnecessary obstruction of roads or damage to property.
In many cases, such roads are under the jurisdiction of the county or other public agencies. It is unnecessary duplication to require municipal consent as well as the consent of other public bodies.
Notwithstanding the decision of the Supreme Court in Hackensack Water Company v. Ruta, 3 N.J. 139 (1949) which states that a municipality may not arbitrarily or capriciously refuse its consent, public bodies might delay service to the public by refusing their consent and thus forcing the water company to resort to court action.
The proposed amendment permitting the water company to present its appeal to the Board of Public Utility Commissioners upon refusal or failure of the public body to give its consent, would provide a speedy determination of the controversy.
The public is protected since the board is required to make a finding that the installation is reasonably necessary for the service, convenience and welfare of the public.
In any event, the water company is required to proceed before the Board of Public Utility Commissioners since the board has construed such consent to be a privilege requiring its approval under Revised Statutes 48:2-14.
[4] Although we consider the need for the project as previously adjudicated and beyond dispute here, it is not wholly accurate to say that Ridgewood is not an affected municipality merely because it has not and does not presently receive water service from the Water Company. Ridgewood and its residents are affected by a water transmission pipeline being installed beneath its public streets and places and in place thereafter. Repairs and maintenance may be required from time to time. The Water Company has effectively obtained the substantial equivalent of a permanent easement for its water transmission pipelines through Ridgewood. We need not decide issues of applicability of a taking requiring compensation, see N.J.S.A. 48:19-15.1, or inverse condemnation, see Washington Market Enterprises, Inc. v. Trenton, 68 N.J. 107 (1975). We recognize that the language in N.J.S.A. 48:19-17 that the laying of the pipelines shall be "free from all charges to be made by any person or body politic whatsoever for such privilege, and may also construct and maintain hydrants on and along such roads, streets and places ..." might be construed as applying only to municipalities that have granted a franchise to a utility. This is highlighted because of the reference to hydrants. There is a relationship between this aspect of the statute and Ridgewood's jurisdiction argument. Although the Water Company does not have a franchise in Ridgewood, the permanent water transmission pipelines extending through Ridgewood can be described as an easement or even a franchise by implication to pass through the municipality. Cf. N.J. Const. (1947), Art. VIII, § 3, par. 3. The court in In re North Jersey Dist. Water Supply Comm'n, supra, 175 N.J. Super. at 183, 206-209, took note of the argument about a constitutionally proscribed gift of public property. We need not decide here whether the State has in effect authorized a gift of an easement in Ridgewood's property.