**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2502-21

TOWN OF CLINTON,

     Petitioner-Respondent,

v.

BOROUGH OF LEBANON,

     Respondent-Appellant.

_____

Argued August 16, 2022 – Decided September 6, 2022

Before Judges Messano, Natali, and Smith.

On appeal from an interlocutory order of the New Jersey Board of Public Utilities, Docket No. WO21060896.

John R. Lanza argued the cause for appellant (Lanza & Lanza, LLP, attorneys; John R. Lanza, of counsel and on the brief; Robyn D. Wright, on the brief).

Noel A. Lesica argued the cause for respondent Town of Clinton (Gebhardt & Kiefer, PC, attorneys; Richard P. Cushing and Noel A. Lesica, on the brief).

Brandon C. Simmons, Deputy Attorney General, argued the cause for respondent New Jersey Board of

Public Utilities (Matthew J. Platkin, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Brandon C. Simmons, on the brief).

Emily F. Smithman, Assistant Deputy Rate Counsel, argued the cause for respondent New Jersey Division of Rate Counsel (Brian O. Lipman, Director, attorney; Brian O. Lipman, Susan E. McClure, Assistant Deputy Rate Counsel, and Christine M. Juarez, Assistant Deputy Rate Counsel, of counsel; Emily F. Smithman, on the brief).

PER CURIAM

The sole issue before us is whether the New Jersey Board of Public Utilities (the Board) has jurisdiction to consider a petition filed by the Town of Clinton's water company (Clinton) alleging the Borough of Lebanon (Lebanon) "refuse[d] or fail[ed] to give its consent," see N.J.S.A. 48:19-17 (Section 17), to Clinton's proposed upgrade of water service lines to customers residing in Lebanon (the Project). Central to the dispute is Lebanon's Ordinance 2020-05 (the Ordinance), enacted on July 15, 2020, which sets minimum standards for road restoration on certain roadways in the borough, including Main Street, under which pipes were to be laid as part of the Project.

The Ordinance requires restoration of the concrete subbase that has historically existed under Main Street for decades, as opposed to "bituminous concrete base course restoration" proposed by Clinton in its original plans.

2                                                              A-2502-21

Lebanon claimed prior street openings that were restored without concrete subbases now compromised the structural integrity of its roads and required increased maintenance costs to Lebanon.  Clinton asserted compliance with the Ordinance would increase the costs of the project substantially.  After months of fruitless negotiation, Clinton filed its petition with the Board alleging Lebanon had "enacted an unreasonable regulation" that "amount[ed] to refusal of consent."  The Board transferred the matter to the Office of Administrative Law (OAL) as a contested case, and the parties appeared before an administrative law judge (ALJ).

Following a status conference, Clinton filed a motion to establish the Board's jurisdiction over the dispute; Lebanon cross-moved for dismissal.  The ALJ directed the Board and New Jersey Division of Rate Counsel (Rate Counsel) to file briefs on the issue; both supported Clinton's position on the jurisdictional question.  The ALJ granted Clinton's motion and denied Lebanon's.

Quoting In re Public Service Electric & Gas Co., the ALJ reasoned "this State has delegated in most sweeping terms 'general supervision and regulation of and jurisdiction and control over all public utilities' . . . to the Board."  35 N.J. 358, 371 (1961) (hereafter, PSE&G).  The ALJ held the disagreement

between a utility under the jurisdiction of the Board and a municipality to which the utility provides services was under the Board's jurisdiction pursuant to N.J.S.A. 48:2-14[1] and Section 17.

The ALJ reasoned, however, that separate from the issue of jurisdiction was Lebanon's assertion that Clinton sought to "overturn the Ordinance." Although acknowledging Clinton's retort that it did not request such relief, the ALJ ordered Clinton to file an amended petition clarifying it was not "contesting" the Ordinance.

Pursuant to N.J.A.C. 1:1-14.10, Lebanon sought the Board's interlocutory review and vacatur of the ALJ's decision, but the Board denied the motion. We granted Lebanon's motion for leave to appeal the Board's denial and remanded

---

[1] N.J.S.A. 48:2-14 provides:

> No privilege or franchise granted . . . to any public utility by a political subdivision of this state shall be valid until approved by the [B]oard. Such approval shall be given when, after hearing, the [B]oard determines that the privilege or franchise is necessary and proper for the public convenience and properly conserves the public interests. In granting its approval the [B]oard may impose such conditions as to construction, equipment, maintenance, service or operation as the public convenience and interests may reasonably require.

the matter to the Board to review on an expedited basis the ALJ's findings and his conclusion that the Board had jurisdiction. The Board ordered both parties, as well as Rate Counsel and the Board's staff, to submit briefs on the issue.

In the interim, Clinton filed its amended petition and again asked the Board to determine whether the Project was reasonably necessary and whether the Ordinance's road restoration standards would unfairly burden ratepayers. As such, the petition requested the Board authorize Clinton to proceed with the Project in accordance with the restoration standards it previously proposed. Otherwise, if it was required to comply with the Ordinance, Clinton requested the Board approve a plan charging increased rates to Lebanon's "taxpayers [who] should pay the additional costs of creating a gold standard" for road restoration.

Lebanon reiterated that it consented to the Project, subject to Clinton's restoration of the road openings in accordance with the Ordinance. Lebanon argued the Board did not have jurisdiction to override a municipality's discretion regarding the materials used in the paving and restoration of municipal streets, because N.J.S.A. 40:67-1 and -2 specifically delegated such authority solely to municipal governing bodies.

In its March 9, 2022 final agency decision, which we now review, the Board concluded its "general supervisory power over utilities, including [its]

powers to resolve disputes regarding service between water utilities and municipalities they serve, are sufficiently broad to create subject matter jurisdiction over this dispute." The Board also concluded, "Lebanon has withheld consent from Clinton to the work Clinton deems necessary for its corporate purposes."

The Board's decision justified its exercise of jurisdiction upon Section 17 and three other grounds. The Board cited the Legislature's broad grant of authority in N.J.S.A. 48:2-13, requiring the Board to generally supervise and regulate all matters regarding a utility's "service and reliability." Additionally, the Board cited N.J.S.A. 48:2-14. Lastly, the Board concluded it had jurisdiction over the petition because of the potential to increase rates charged to Lebanon residents using the water service. The Board remanded the matter to the OAL for further "contested case proceedings."[2]

Before us, Lebanon repeats the arguments it made to the Board. Essentially, it contends that, for purposes of Section 17, it has not denied consent to Clinton. Lebanon also argues that the legislative authority to regulate water

---

[2] Although by affirming the ALJ's decision the Board fully resolved the issue we remanded for its consideration—whether it had jurisdiction over the dispute—the final order curiously said the Board was again denying Lebanon's motion for interlocutory review of the ALJ's findings and conclusions.

A-2502-21

utilities bestowed upon the Board cannot trump the specific legislative grant of authority to municipalities to determine manner and methods of opening and restoring streets, see, e.g., N.J.S.A. 40:67-1.

Clinton, the Board, and Rate Counsel all contend the Board's broad statutory powers permit exercise of its jurisdiction to resolve the dispute, and they all argue that the prolonged fruitless negotiations delaying implementation of service improvements is exactly the type of situation for which Section 17 applies. The Board and Rate Counsel also advance other reasons cited in the Board's final order that provide statutory support for the exercise of its jurisdiction.

Without passing on the merits of each party's position, and without agreeing with the Board's alternate bases that it claims independently support its jurisdiction, we do agree that the Board has jurisdiction to resolve the dispute pursuant to Section 17. See, e.g., Hayes v. Delamotte, 231 N.J. 373, 387 (2018) ("We also note that 'it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion.'" (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))). We therefore affirm the Board's order remanding the matter to the OAL for further proceedings.

7

"The determination of whether an administrative agency has jurisdiction over a particular matter 'is one of statutory construction, that is, determining the legislative intent.'" Borough of Haledon v. Borough of North Haledon, 358 N.J. Super. 289, 298 (App. Div. 2003) (quoting Hinfey v. Matawan Reg'l Bd. of Educ., 77 N.J. 514, 529 (1978)).  Pursuant to N.J.S.A. 48:2-13(a), "The [B]oard shall have general supervision and regulation of and jurisdiction and control over all public utilities as defined in this section and their property, property rights, equipment, facilities and franchises so far as may be necessary . . . ." "The Court long ago recognized that 'the public interest in proper regulation of public utilities transcends municipal or county lines, and . . . a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the State." N.J. Nat. Gas Co. v. Borough of Red Bank, 438 N.J. Super. 164, 177–78 (App. Div. 2014) (quoting PSE&G, 35 N.J. at 371).

Section 17 provides in full:

> Each water company may lay its pipes beneath such public roads, streets, and places as it may deem necessary for its corporate purposes, free from all charge to be made by any person or body politic whatsoever for such privilege, and may also construct and maintain hydrants on and along such roads, streets and places, provided that the pipes shall be laid at least [three] feet below the surface and shall not in anywise

unnecessarily obstruct or interfere with the public travel or damage public or private property.

The consent of the public body charged with the repair and maintenance of such public roads, streets and places shall first be obtained.

If such public body shall refuse or fail to give its consent, the water company may appeal to the Board . . . . A hearing thereon shall be had on notice to all parties in interest, who shall be afforded an opportunity to be heard. If, after such hearing the Board of Public Utility Commissioners shall determine that the installation of such pipes or hydrants is reasonably necessary for the service, convenience or welfare of the public, the water company shall be authorized to proceed in accordance with such determination.

[N.J.S.A. 48:19-17 (emphasis added).]

Contrary to Lebanon's contentions, whether it "denied consent" is not dispositive because it is undisputed that Lebanon "fail[ed] to give its consent" to Clinton's Project as proposed.

As the Court explained in In re Petition of South Lakewood Water Co., Section 17 limits a franchisee's authority "to lay pipes 'in such places as shall be necessary and proper,'" because that "broad right could not be exercised . . . as to laying pipes in public roads and streets, without the further consent of the municipality." 61 N.J. 230, 242 (1972) (first quoting N.J.S.A. 48:19-13; and then quoting N.J.S.A. 48-19-17).

> The purpose of this additional consent has consistently been . . . to require a previously franchised company to submit to reasonable local regulations as to the manner of laying the pipes and thereafter maintaining them in the area covered by its franchise so as to protect the public against interference with ordinary use of and damage to the streets.
>
> [Ibid.]

But, the Court has clearly said "the Board has a veto power over conditions imposed by governmental agencies which may inhibit the Board's regulatory control over public utilities." Twp. of Marlboro v. Vill. Water Co., 72 N.J. 99, 108 (1976).

In In re Petition of Hackensack Water Co., the Village of Ridgewood opposed a State approved project whereby the Hackensack Water Company (Water Company) proposed diversion of waters to its service area via a pipeline laid under Ridgewood's streets. 196 N.J. Super. 162, 164–65 (App. Div. 1984). When Ridgewood denied its consent, the Water Company filed a petition with the Board pursuant to Section 17. Id. at 165. After conducting hearings, the Board granted the Water Company's petition and incorporated specific guidelines in its approval "for the protection of Ridgewood." Id. at 166.

Ridgewood appealed, arguing the Board lacked jurisdiction to hear the dispute because Ridgewood never granted a franchise to the Water Company,

and Section 17 only applied where a franchise had been granted. Id. at 167. In a variation of Lebanon's contention that Title 40 gives municipalities exclusive authority and control over their streets, Ridgewood also argued that N.J.S.A. 48:19-19 was the applicable statute. Id. at 168. The section provides:

> Every water company organized under the laws of this State may contract with any company organized under any law of the State for a supply of water upon such terms and for such times as may be mutually agreed upon. Such companies may lay such supply mains and pipes as may be thought necessary to furnish such supply through any property upon obtaining the consent in writing of the owner thereof, or under the surface of any streets, roads, highways or public places, provided that the companies first obtain the consent by ordinance of the municipalities through which the mains and pipes are to be laid.
>
> The municipal body having control of such streets, roads, highways or public places shall designate the place therein where and the manner in which the pipes or mains shall be laid.
>
> [N.J.S.A. 48:19-19 (emphasis added).]

We disagreed, however, with both of Ridgefield's arguments:

> Although the language of N.J.S.A. 48:19-17 regarding the exemption from charges for laying pipes and constructing and maintaining hydrants could be considered to apply only to municipalities in which franchises have been granted, we are not persuaded that . . . the overall intent of the statute is limited solely to such situations. Indeed, we think the thrust of the statute is to confer jurisdiction on the [Board] where the

State has authorized a project in the public interest. Furthermore, even under N.J.S.A. 48:19-19[,] we would be constrained to find that if consent of a municipality was not given in such circumstances as exist here, it could be successfully challenged on appeal to the [Board] on the basis that such consent was unreasonably withheld. In such circumstances[,] because of the primary jurisdiction of the Board over water companies, it would have jurisdiction to hear appeals from the denial of consent.

[Hackensack Water Co., 196 N.J. Super. at 171 (citing Hackensack Water Co. v. Ruta, 3 N.J. 139, 144–46 (1949)).]

In short, the Board's jurisdiction to hear and decide disputes pursuant to Section 17 has been recognized in a variety of circumstances, including a dispute between a non-franchised water utility and a municipality over the laying of water pipes under municipal streets. We conclude in this case the Board has jurisdiction pursuant to Section 17 to hold hearings on Clinton's petition and resolve the dispute between the two parties. We express no opinion on the merits of the petition. An adverse final agency decision is, of course, appealable as of right to this court. See R. 2:2-3(a)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-2502-21